35720.   CHITTY *v.* HORNE-WILSON, INC. *et al.*

Decided September 13, 1955—Rehearing denied October 11, 1955.

718

*Robert W. Reynolds,* for plaintiff in error.

*Peacock, Perry, Kelley & Walters, Gibson & DeLoache,* contra.

QUILLIAN, J. 1. The defendants contend that, while the case sounds in tort, it is based upon the breach of a contract, and that consequently the rules of law as to the limitation of actions applicable to contracts rather than those relative to torts govern the time within which the suit could be legally brought.

Concededly, if the plaintiff had not entered into the contract under the terms of which he purchased the furnace, he could not have sustained damage when it is alleged to have exploded. However, the action is not predicated upon the breach of a contract, but rather upon the contention that, although the defendants represented the furnace to be in proper working order and in no

way dangerous, the furnace actually was defective and because of such defect it exploded and injured the plaintiff. This being an action for injuries arising out of these alleged representations the action would rest in tort, and no privity of contract between the defendants and the plaintiff is necessary. *King Hardware Co.* v. *Ennis,* 39 *Ga. App.* 355 (147 S. E. 119).

Counsel for the defendants cites interesting authorities pertaining to the rules relative to statutes of limitations in causes of action arising ex contractu, and other good authority for the proposition that the statute of limitations begins to run from the time the damage is done, even though it is not discovered by the injured party until a subsequent time. Among these cases is *Davis* v. *Boyett,* 120 *Ga.* 649 (48 S. E. 185, 66 L. R. A. 258, 102 Am. St. R. 118, 1 Ann. Cas. 386), holding that, when a daughter is seduced but the father does not learn of the unfortunate event until some time has expired, the statute begins to run at the time of the seduction. It is easy to comprehend how the statute of limitations would begin to run at the very time of the seduction, for it was then that the damage to the father actually occurred, though he was not then aware of the disgrace visited upon his household by the wrongful act of the seducer. If a different rule should be adopted, it would give great hostage to fraud and perjury. One who found that by his own procrastination his action was barred, might falsely declare that knowledge of the damage had not come to him until such time as would save his action from the bar of the statute.

But none of the cases cited shows that the statute of limitations begins to run against a tort action at any time except when the damage from the tortious act was actually sustained by the plaintiff. In this case the statute began to run when the furnace exploded, for it was then the plaintiff alleges he was injured.

This being a tort action for personal injuries the cause of action could not have arisen until the injury was sustained on December 13, 1952. Therefore, the petition was filed within the two years allowed by statute. Code § 3-1004.

2. The defendant further contends that the petition did not set forth a cause of action. While the petition is inartistically drawn, we construe it to allege in substance: that the defendant and its manager, L. L. Smith, sold the furnace containing a latent

defect which was the proximate cause of the plaintiff's injuries; that the defendants were negligent in not discovering the defect by properly inspecting and testing the furnace before putting it on the market; that the defendant Smith assured the plaintiff that the furnace would function properly and was in no way dangerous.

It is true that the defendants were not the manufacturers and therefore were not liable for the defective construction of the furnace. However, they did represent that the furnace was in proper working order and that it would function properly. Upon making this representation, the defendants assumed the duty of discovering that the furnace was safe and would not explode. "If a person is without knowledge as to whether a particular thing is true or not, he ordinarily will act at his peril in representing it to be true." *King Hardware Co.* v. *Ennis,* supra, p. 363. The dealer who puts upon the market goods manufactured by another should pass the article on upon the assumption, without his personal representations, that the manufacturer has performed his duty as to the safety of the product.

"Representations imply knowledge, and if a tradesman sells or furnishes an article representing it to be safe for the uses for which it was designed, it may be concluded that he knew or should have known of such defects as it may possess, and if it turns out that the article was defective, then, in a suit against him for injuries occasioned thereby, an allegation that he either knew or ought to have known of the defects will be sufficient as a charge of negligence in his failure to know. The action being in tort, it is immaterial that there was no privity of contract between the plaintiff and the defendants in the sale of the stove; and the more especially is this true since the representations were made directly to the plaintiff." *King Hardware Co.* v. *Ennis,* supra, p. 363.

The trial judge erred in sustaining the general demurrer and in dismissing the petition for the reasons assigned.

The defendants contend that, in making repairs on the furnace in an effort to make it function properly, they occupied the status of volunteers or accommodators of the plaintiff and consequently could be liable only for gross negligence. This court held in the case of *Studebaker Corporation* v. *Nail,* 82 *Ga. App.* 779, 783 (62

S. E. 2d 198): "But a manufacturer may warrant his products to ultimate purchasers. In this day of progressive and highly competitive business, a warranty of his product by a manufacturer to the ultimate purchaser of his product may be intended by the manufacturer as an added inducement to the ultimate purchaser to buy the product of that manufacturer rather than that of his competitor. The consideration for such a warranty would be the purchase by the ultimate purchaser of that manufacturer's product, which is in effect a direct purchase, as it would have been if the purchaser had bought from an agent of the manufacturer instead of an independent dealer or contractor."

In the *Studebaker Corporation* case the defendant was the manufacturer and in this case the defendant is a distributor of a product placed upon the market.

The interest of the manufacturer and the distributor in promoting the sale of the commodity they produce or sell is the same. In both cases their success depends upon promoting the sale of the commodity. The good will of satisfied customers is recognized as an essential in promoting sales, and without it increase and stabilization in the distribution of the commodity is rarely achieved. So, under the holding in the *Studebaker Corporation* case, the conclusion is inescapable that the defendants, in endeavoring to repair the furnace so that it would function properly, were neither volunteers nor accommodators of the plaintiff.

The defendants in error suggest that this court review the rulings of the trial court on special demurrers to the petition. No exception is taken to any ruling on the special demurrers and no order concerning them appears in the record.

*Judgment reversed. Felton, C. J., and Nichols, J., concur.*