[Civ. No. 29958. Second Dist., Div. One. Apr. 12, 1966.]

JAMES ARLEY COLLINS et al., Plaintiffs and Appellants, v. COUNTY OF LOS ANGELES, Defendant and Respondent.

452

Roy C. Zukerman and Russell J. Mattier for Plaintiffs and Appellants.

Harold W. Kennedy, County Counsel, and Robert C. Lynch, Assistant County Counsel, for Defendant and Respondent.

LILLIE, J.—In a second amended complaint for damages plaintiffs named County of Los Angeles in two causes of action alleging their false arrest and imprisonment by two deputy sheriffs. Plaintiffs appeal from a judgment dismissing the action as to the county following an order sustaining without leave to amend its demurrer to the second and sixth causes of action. Other named defendants are not parties to this appeal.

On June 1, 1964, the within action was initiated by the filing of a complaint. On September 16, 1964, in a second amended complaint, plaintiffs alleged in the second and sixth causes of action, that on June 3, 1963, they were falsely arrested and imprisoned by deputy sheriffs acting within the scope of their authority as agents of the County of Los Angeles; that during the course of a trial on the criminal charges on which they were arrested, which commenced October 9, 1963, and terminated on October 24, 1963, they first discovered that their arrest and imprisonment had not been lawful, in that the deputies did not have a valid warrant therefor and did not ''reasonably believe that a public offense had been committed in their presence''; that prior to the trial they were not aware and, in the exercise of reasonable diligence, could not have become aware that their arrest was made by officers who did not then ''reasonably believe that a public offense had been committed in their presence''; and that they filed a verified claim for damages with the County of Los Angeles on December 27, 1963, within 100 days from the discovery of the unlawfulness of their arrest. Inasmuch as the filing of such claim was not made within 100 days from the date of the actual arrest and imprisonment (June 3, 1963), the same was rejected by the county; this action followed.

The sole issue is whether plaintiffs presented their claim to the county within 100 days after ''the accrual of the cause of

action'' as then required under section 715, Government Code. Appellants argue that their cause of action for false arrest and false imprisonment did not accrue until they discovered the falsity of their arrest upon the termination of the trial of the criminal cause (October 24, 1963). The trial court held that the date of accrual of plaintiffs' cause of action was June 3, 1963, thus no verified claim was timely filed with the county under section 715. We conclude that the county's demurrer to the second and sixth causes of action was properly sustained without leave to amend.

The applicable claim statute then in effect, section 715, Government Code (later repealed, and now § 911.2) provided: ''A claim relating to a cause of action . . . for physical injury to the person or to personal property . . . shall be presented as provided in Section 714 not later than the one hundredth day after the accrual of the cause of action. . . .

''For the purpose of computing the time limit prescribed by this section, the date of accrual of a cause of action to which a claim relates is the date upon which the cause of action accrued within the meaning of the applicable statute of limitations.''

Section 312, Code of Civil Procedure, introducing the limitation provisions in the code, provides that civil actions can only be commenced within the specified periods ''after the cause of action shall have accrued.'' ▉ A cause of action accrues at the moment the party who owns it is entitled to bring and prosecute an action thereon. (*Bainbridge* v. *County of Riverside,* 167 Cal.App.2d 418, 422 [334 P.2d 625]; *Lubin* v. *Lubin,* 144 Cal.App.2d 781, 789 [302 P2d 49]; *Smith* v. *Minnesota Mutual Life Ins. Co.,* 86 Cal.App.2d 581, 590 [195 P.2d 457]; *Los Angeles County* v. *Metropolitan Cas. Ins. Co.,* 135 Cal.App.2d 28 [26 P.2d 699, 27 P.2d 914].) ▉▉ Generally, the right to bring and prosecute an action arises immediately upon the commission of the wrong claimed, and the statute of limitations runs from that time; thus, a cause of action in tort arises when the wrongful act is committed, not at the time of discovery of the act. The Supreme Court early declared, ''Cases of hardship may arise, and do arise, under this rule, as they arise under every statute of limitations; but this, of course, presents no reason for the modification of a principle and policy which, upon the whole, have been found to make largely for good. . . . And so throughout the law, except in cases of fraud, it is the time of the act, and not the time of the discovery, which sets the statute [of limitations] in

motion. [Citations.]'' (*Lambert* v. *McKenzie,* 135 Cal. 100, 103 [67 P. 6].) ■■■ The statute will begin to run although plaintiff is ignorant of his cause of action, and mere ignorance, not induced by fraud, does not toll the running of the statute. (*Rubino* v. *Utah Canning Co.,* 123 Cal.App.2d 18, 27 [266 P.2d 163] ; *Sonbergh* v. *MacQuarrie,* 112 Cal.App.2d 771 [247 P.2d 133] ; *Scafidi* v. *Western Loan & Bldg. Co.,* 72 Cal. App.2d 550, 566 [165 P.2d 260].)

No California case has been cited to us, and an independent research has produced no authority in this state, specifically considering the date of accrual of a cause of action for false arrest and false imprisonment. However, we are not without specific guidance. It appears to be an almost universal rule in other states that the cause of action accrues upon termination of the imprisonment, and not at the time the proceedings under which plaintiff's arrest occurred ended. A leading case decided in 1955 by the Supreme Court of Oklahoma, *Belflower* v. *Blackshere* (Okla.) 281 P.2d 423, reflects the application of this established rule in a situation very similar to the one at bench. The petition for false arrest and false imprisonment therein showed the lapse of more than a year from the date on which plaintiff was released from imprisonment on cash bail. Sometime later the criminal proceedings against plaintiff were dismissed and the cash bail returned to him. Said the court at pages 425-426 : ''In an illegal arrest and false imprisonment case, we are convinced that the one year statute of limitations [the same as in California (Code Civ. Proc., § 340, subd. 3)] begins to run . . . at the time plaintiff was released from his alleged illegal restraint and not when the proceedings by which his arrest occurred terminated, . . .

''We are of the opinion that it is immaterial whether the proceedings under which plaintiff was imprisoned were terminated or not when a suit for false imprisonment is filed. In *Knickerbocker Steamboat Co.* v. *Cusack* (2 Cir.) 172 F. 358, it was said at page 359 of the opinion : '. . . The authorities are practically unanimous to the effect that, in an action solely for false imprisonment, the termination of the criminal proceedings is immaterial. . . . See also *Davis* v. *Johnson* (4 Cir.) 101 F. 952.

''Since we conclude that the statute of limitations begins to run from the termination of the imprisonment of plaintiff and not from the termination of the proceedings, we think the action of the trial court in sustaining the separate demurrers of defendants and dismissing plaintiff's action upon his elec-

tion to stand upon his amended petition, was correct.'' The *Belflower* case is also reported in 49 A.L.R.2d 917, following which appears an Annotation (49 A.L.R.2d 922) ''When statute of limitations begins to run against action for false imprisonment or false arrest.'' Therein, the writer, citing numerous cases from other states declares that ''the decision in *Belflower* v. *Blackshere* (1955, Okla.) 281 P.2d 423, 49 A.L.R.2d 917, holding that under statutes barring actions for false imprisonment begun more than a specified time after the accrual of the cause of action the limitation begins to run from the termination of the imprisonment and not from the time when the proceedings under which the plaintiff's arrest occurred ended, is in accord with the general rule on the subject.'' (P. 922.) At the conclusion of the Annotation, reference is made to the Oregon case of *Lane* v. *Ball*, 83 Ore. 404 [160 P. 144, 163 P. 975]), decided in 1917, herein relied upon by appellants. Any statement therein relative to the time of accrual of a cause of action for false imprisonment appears to be no more than dictum, for the case involved only an action for damages for malicious abuse of process; moreover, it seems to be the only pronouncement contrary to the general rule proclaimed in *Belflower*. ■ Thus, inasmuch as the only allegation as to imprisonment in the second amended complaint is that plaintiffs were imprisoned and deprived of their liberty on June 3, 1963, and there is no allegation of any imprisonment after that date, we hold in accord with the established rule of *Belflower*, that the cause of action herein accrued on June 3, 1963, and the 100 days started to run from that date; and that plaintiffs' claim was not timely presented under then section 715, Government Code.

Actually, under the allegations of the second amended complaint there was no valid reason for plaintiffs to wait until the disposition of the criminal charge before presenting their claim. It is conceded by all parties that the arrest was made without a warrant; at that time plaintiffs could have pleaded a prima facie case and filed their complaint as well as their claim with the county. ■ ''A cause of action for false imprisonment based on unlawful arrest is stated where it is alleged that there was an arrest without process, followed by imprisonment and damages. Upon proof of those facts the burden is on the defendants to prove justification for the arrest. (*Hughes* v. *Oreb*, 36 Cal.2d 854, 858 [228 P.2d 550]; *Kaufman* v. *Brown*, 93 Cal.App.2d 508, 511-513 [209 P.2d 156]; *Collins* v. *Jones*, 131 Cal.App. 747, 750 [22 P.2d 39]; see

1 Cooley on Torts [4th ed. 1932], § 112, pp. 360-361; 22 Am. Jur. 422, 427; cf. *People* v. *Agnew*, 16 Cal.2d 655, 661-664 [10 P.2d 601].)'' (*Dragna* v. *White*, 45 Cal.2d 469, 471-472 [289 P.2d 428].) A police officer who makes an arrest without a warrant and without justification may be held civilly liable for false arrest and imprisonment. (*Miller* v. *Glass*, 44 Cal.2d 359, 361 [282 P.2d 501]; *Hughes* v. *Oreb*, 36 Cal.2d 854, 857 [228 P.2d 550].) Plaintiffs knew at the moment of their arrest that the officers were acting without a warrant; they also knew that as an immediate result thereof they were deprived of their liberty and imprisoned for a short while until released on bail, and that they suffered the damage they now claim.

Appellants argue that they did not and could not be reasonably expected to discover the falsity of their arrest until the criminal trial subsequent thereto had commenced. To the contrary, unless plaintiffs were involved in some unlawful activity, it is only reasonable to assume that immediately upon their arrest and imprisonment they would have believed the same to be unlawful, at which time they could and should have sought legal assistance to determine the cause and the reason for their arrest, just as they immediately sought and obtained legal assistance in their defense on the trial on the criminal charges. The natural outrage and indignation of an innocent person over what he has reason to believe is a false arrest is reflected in his conduct at the outset of his detention, not several months later, long after his release, when the criminal trial is dismissed on some legal technicality. In any event, mere ignorance, not induced by fraud, of the existence of facts constituting a cause of action on the part of plaintiff does not prevent the running of the statute of limitations. In *Sonbergh* v. *MacQuarrie*, 112 Cal.App.2d 771 [247 P.2d 133], a judgment on the pleadings in an action for damages for assault and battery was affirmed. The complaint, filed two years and eleven months after the assault, alleged that plaintiff was unaware at the time of the assault that substantial injury had resulted therefrom, and could not have learned the extent of his injuries for a considerable period of time thereafter. He did not plead fraud, concealment or duress on the part of respondent which prevented him from ascertaining that he had suffered injury at his hands. The court held that a cause of action in tort arises when the wrongful act is committed although damages resulting therefrom are not sustained at that time, and even though the fact that a tort was committed

458

was not known until the right of recovery was barred. The court said at page 773: ''And in *Scafidi* v. *Western Loan & Bldg. Co.*, 72 Cal.App.2d 550, 566 [165 P.2d 260], the following appears: 'Our courts have repeatedly affirmed that mere ignorance, not induced by fraud, of the existence of the facts constituting a cause of action on the part of a plaintiff does not prevent the running of the statute of limitations. (*Lightner Mining Co.* v. *Lane*, 161 Cal. 689, 696 [120 P. 771, Ann. Cas. 1913C 1093]; *Rose* v. *Dunk-Harbison Co.*, 7 Cal.App.2d 502, 505 [46 P.2d 242]; *Medley* v. *Hill*, 104 Cal.App. 309, 311 [285 P. 891]; 37 C.J. § 350, p. 969]; and that ''mere ignorance of the facts . . . without some valid excuse for ignorance, was of no consequence.'' (*Dennis* v. *Bint*, 122 Cal. 39, 44 [54 P. 378, 68 Am.St.Rep. 17] (citing authority).)'

'' 'The right to maintain an action arises immediately upon the commission of the wrong complained of, and the statute runs from that time, and not from the date of damage caused by the wrong. Thus a cause of action in tort arises when the wrongful act is committed, although all the damages occasioned by the act were not sustained at that time, *and even though the fact that a tort was committed was not known until the right of recovery was barred.*' '' (Italics added.) (See also, *Rubino* v. *Utah Canning Co.*, 123 Cal.App.2d 18, 27 [266 P.2d 163].)

In support of their position, appellants cite those causes of action in which the statute of limitations runs from the time of discovery of the injury, particularly those for medical malpractice. This exception to the general rule rests upon the theory that ignorance or concealment which is the result of defendant's conduct rather than the lack of diligence of plaintiff tolls the running of the statute until discovery of the injury. (See *Huysman* v. *Kirsch*, 6 Cal.2d 302, 312-313 [57 P.2d 908].) Moreover, the various characteristics distinctive to malpractice actions are not present in those for false arrest and false imprisonment—the continuing nature of the relationship of physician and patient and reliance by the latter on the former's advice (*Huysman* v. *Kirsch, supra*, 6 Cal.2d 302, 309); fraudulent concealment by a physician of the patient's condition to prevent him from consulting other doctors (*Pashley* v. *Pacific Elec. Ry. Co.*, 25 Cal.2d 226, 235 [153 P.2d 325]); and the fiduciary relationship existing between patient and physician (*Stafford* v. *Shultz*, 42 Cal.2d 767, 777 [270 P.2d 1]). In the instant case appellants were well aware of their arrest and imprisonment on June 3, 1963; they were

dealing with the deputies at arm's length; and there is no allegation of a basis for reliance or of fraudulent concealment or that plaintiffs used reasonable or, in fact, any diligence to determine the cause or reason for their arrest on June 3, 1963. Appellants attempt to draw an analogy between the within action and the cause of action for malicious prosecution. The actions are not similar because a necessary element of an action for malicious prosecution is a judicial proceeding favorably terminated. In a false imprisonment case there is no such requirement. (*Wilson* v. *Loustalot,* 85 Cal.App.2d 316, 325 [193 P.2d 127] ; *Belflower* v. *Blackshere* (Okla.) 281 P.2d 423, 425-426.) Their reliance on *Thompson* v. *County of Fresno,* 59 Cal.2d 686 [31 Cal.Rptr. 44, 381 P.2d 924], is also misplaced. There the court found that plaintiff's failure to file her claim under section 716, Government Code, had been due to the fact that she was totally physically incapacitated during the period and her reliance on false advice relative to her condition knowingly given to her by county employees.

Further appellants argue that even though they were immediately released on bail on June 3, 1963, their detention continued in effect without interruption until October 24, 1963, at which time the criminal cause was dismissed and their bail exonerated; thus, their cause of action did not accrue until October 29, 1963. Plaintiffs allege that their arrest and imprisonment took place on June 3, 1963; their second amended complaint does not allege imprisonment after that date. While there is no direct allegation thereon, it is apparent from a reading of the pleading that on June 3, 1963, they were released on bail. ▆ It is true that under section 1300, Penal Code, "At any time before the forfeiture of their undertaking, or deposit by a third person, the bail or the depositor may surrender the defendant in their exoneration, or he may surrender himself, to the officer to whose custody he was committed at the time of giving bail, . . ." but it is also clear that the right to bail guaranteed by the Constitution is a means of securing release from custody of a person on an undertaking that he appear in court to answer the charge against him at the time and place appointed. "False imprisonment is the unlawful violation of the personal liberty of another." (Pen. Code, § 236.) ▆ Definition of the crime and the tort are the same. (*Parrott* v. *Bank of America,* 97 Cal.App.2d 14, 22 [217 P.2d 89, 35 A.L.R.2d 263] ; *Stallings* v. *Foster,* 119 Cal.App.2d 614, 619 [259 P.2d 1006].) The tort requires some restraint of the person and that he be deprived

of his liberty or compelled to remain where he does not wish to remain, or go where he does not wish to go (*People* v. *Agnew,* 16 Cal.2d 655, 659-660 [107 P.2d 601]; *Vandiveer* v. *Charters,* 110 Cal.App. 347, 355 [294 P. 440]); and that the person be restrained of his liberty without sufficient complaint or authority. (*Ware* v. *Dunn,* 80 Cal.App.2d 936, 943 [183 P.2d 128].) The second amended complaint does not allege that during the period of their release on bail from June 3, 1963, to October 24, 1963, plaintiffs were ever personally restrained of their liberty or confined or compelled to stay or to go somewhere against their will. In *Belflower* v. *Blackshere* (Okla.) 281 P.2d 423, the plaintiff, too, had been released on bail immediately after his arrest which, being cash, was returned to him upon termination of the trial on the criminal charge; this was immaterial to the court's holding.

Claim statutes are subject to the rule of strict compliance (*Bradshaw* v. *Glenn-Colusa Irr. Dist.,* 87 Cal.App.2d 882, 884 [198 P.2d 106]), which requires that a claim be disregarded if it is filed late. (*Williams* v. *San Diego etc. School Dist.,* 143 Cal.App.2d 564, 567 [299 P.2d 916]; *Albaeck* v. *County of Santa Barbara,* 123 Cal.App.2d 336, 340 [266 P.2d 844]; *Gale* v. *County of Santa Barbara,* 118 Cal.App.2d 451, 453 [257 P.2d 1000].)

The second and sixth causes of action of the second amended complaint show on their face that plaintiffs' claims were not filed within 100 days after the accrual of their cause of action as required by statute. Even assuming that plaintiffs could have shown reasonably sufficient grounds for being unaware of their claim, they failed to avail themselves of the provisions of Government Code, sections 911.4 and 912, which give a statutory mode of relief to persons who have failed to file claims within the 100-day period. These sections became effective on September 23, 1963, before the date plaintiffs allege they discovered the existence of their claims against the county. Having failed to rely on these sections to obtain relief by petition to file a late claim, appellants are not now in a position to cite these sections in support of their contentions herein.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied May 9, 1966, and appellants' petition for a hearing by the Supreme Court was denied June 8, 1966.