[Civ. No. 23905. First Dist., Div. One. May 21, 1968.]

N. H. HOWE et al., Plaintiffs and Appellants, v. PIONEER MANUFACTURING COMPANY et al., Defendants and Respondents.

Hallinan, Shapiro, Hallinan and Rice, Michael Stepanian and Alexander Poeter for Plaintiffs and Appellants.

Bronson, Bronson & McKinnon, Ropers, Majeski & Phelps, Paul H. Cyril and Robert S. Luft for Defendants and Respondents.

SIMS, J.—Plaintiffs Howe, his wife and adult daughter, who with a minor son occupied the premises of defendant Bennett, under a lease, have appealed[1] from summary judgments entered in favor of their landlord and the manufacturer who allegedly fabricated and installed the gas furnace in the premises. Plaintiffs' claims for damages for personal injuries based on defendants' negligence and breach of warranty were dismissed as barred by the statute of limitations. A similar claim asserted on behalf of the minor son was not so dismissed. In addition, the parents' claim to recover rent for alleged constructive eviction was stricken.

The defendants assert that since the alleged negligence or breach of warranty in the manufacture, installation and maintenance of the defective furnace, and the first alleged injuries resulting therefrom, both occurred more than one year prior to the filing of the complaint, the action was barred by the one-year provision of section 340, subdivision 3, of the Code of Civil Procedure. Plaintiffs, in attacking the lower court's judgments, which gave legal sanction to the defendants' views, contend that the correct time for the commence-

[1]The notice of appeal recites: ''This appeal is from the entry of judgment of January 13, 1966, and also January 21, 1966.'' The order granting the manufacturer's motion for summary judgment was apparently granted December 15, 1965, as evidenced by a written order filed December 23, 1965, and encompassed in a judgment entered on January 21, 1966. The order granting the landlord's motion was apparently granted on January 11, 1966, as evidenced by a written order which was filed on January 12, 196[6] and entered as a judgment on January 13, 196[6]. It was subsequently encompassed in a judgment entered January 21, 1966. The appeal is deemed to be from the two judgments entered January 21, 1966.

ment of the statutory period is when the injured party knows or should have known that he has had a right violated, and not when he merely knows that he is sick or ill; that a factual issue was tendered on the question of whether plaintiffs knew or should have known of the breach of duty by defendants or either of them, and that therefore it was error to grant the summary judgments.

It is concluded, for the reasons set forth below, that plaintiffs are entitled to allege and prove any separate injury suffered within one year prior to the filing of the complaint, and that any defense based on their prior knowledge, or cause for knowledge of the source of their injuries and the wrongful acts or omissions of the defendants which allegedly caused the escape of gas, raises factual questions which are not resolved on the record. It was, therefore, error to grant the summary judgments.

The claim to recover the rent paid as damages for constructive eviction is not seriously pressed, and, as noted below, was properly dismissed because the allegations of the amended complaint demonstrate it has no merit.

*The record*

On October 5, 1964, plaintiffs N. H. Howe, individually and as guardian ad litem of Lee Martin Howe, a minor, Helen H. Howe, and Lynne Howe, filed their original verified complaint in the Superior Court of San Mateo County, against Pioneer Manufacturing Company, Meyer Brother Construction Company, D. Robert Bennett, M.D., and various fictitious defendants.

The complaint contained six causes of action. The first four set forth the respective claim of each plaintiff and alleged negligence on the part of the defendants. The fifth cause of action was for breach of warranty, express and implied. In these first five causes of action, plaintiffs alleged that on December 7, 1960 they had taken possession of certain premises in San Mateo, California, leased from defendant, Bennett, for residential purposes; that "thereafter on many diverse occasions and until . . . the 21st day of January, 1964 the plaintiffs . . . would from time to time become violently ill and nauseated, and on some occasions become unconscious and hospitalized"; that these injuries were caused by a gas furnace, negligently manufactured, installed and inspected and tested by defendants; that this furnace was dangerous and defective; and that plaintiffs' illness "was unexplained and undetermined until . . . the 21st day of January 1964 when it

was discovered . . . that as a direct and proximate result of said dangerous and defective furnace, gas had been permeating the said premises and poisoning the said plaintiffs.''

In the final, and sixth cause of action, plaintiffs alleged that they had rented the property for the four-year period from defendant Bennett; that defendant had covenanted and agreed that the premises were fit and proper for use as a residence; and that in fact the defective furnace and the leaking gas, rendered the premises unwholesome and unfit. The parents, therefore, sought repayment of the rent paid to defendants for the period because of a constructive eviction.

The manufacturer's demurrer to the original complaint on the grounds that each cause of action was barred by the statute of limitations was sustained. On October 15, 1965, plaintiffs filed their amended complaint. This complaint differed from the original complaint in that the allegations with reference to the date when plaintiffs claimed to have become ill were changed from ''on many diverse occasions between the 7th day of December 1960 and the 21st day of January 1964'' to ''on or about November 27, 1963, and on many diverse occasions thereafter.'' However, the cause of action of the minor plaintiff continued to allege the dates contained in the original complaint.

The manufacturer and the landlord each filed a demurrer to the amended complaint which set up the statute of limitations and certain grounds of special demurrer, and each interposed a notice of motion for summary judgment. Each motion recited it was based on the pleadings, records and files, and upon an earlier affidavit filed in connection with a similar motion by the construction company.[2] No other affidavit or declaration was filed in support of either motion, but the attorney then representing the plaintiffs filed a counterdeclaration.

The court had before it the pleadings filed by the plaintiff. The defendants were entitled to rely on the uncontradicted allegations of the plaintiffs' complaint insofar as these allegations supported their motions. (*Joslin* v. *Marin Munici-*

---

[2]On November 10, 1965, the defendant construction company, which allegedly had built the house in question, filed its answer to the amended complaint, and its motion for summary judgment, which was supported by the affidavit of its attorney, Menifee. This motion was granted December 15, 1965, and a judgment was signed on the same date and entered on December 16, 1965. No appeal has been taken from that judgment, and the proceedings are of consequence only because each of the other defendants adopted the Menifee affidavit.

336

*pal Water Dist.,* (1967) 67 Cal.2d 132, 146-147 [60 Cal. Rptr. 377, 429 P.2d 889]; *Thornton* v. *Victor Meat Co.* (1968) 260 Cal.App.2d 452, 461-462 [67 Cal.Rptr. 887].) The plaintiffs are bound by the allegations in their original complaint and the court could also properly consider them against the pleaders. (*Hardy* v. *Admiral Oil Co.* (1961) 56 Cal.2d 836, 840 [16 Cal.Rptr. 894, 366 P.2d 310]; *Bustamente* v. *Haet* (1963) 222 Cal.App.2d 413, 415 [35 Cal.Rptr. 176]; *Mock* v. *Santa Monica Hospital* (1960) 187 Cal.App.2d 57, 60 [9 Cal.Rptr. 555].)

■ The defendants allege before this court that "the original transcripts [of the depositions] were before the court." This assertion is apparently predicated upon the provisions of subdivision (f) of section 2019 of the Code of Civil Procedure, which direct the officer taking a deposition to file it with the court. There is nothing in the record to indicate that the depositions, which are referred to in the papers filed in connection with the motions, had, in fact, been filed with the court prior to the hearing on the motions. Nor does it appear that the depositions or their contents were offered in evidence at that hearing, except insofar as extracts were contained in the affidavit and in the declaration. A deposition may be used to support or oppose a motion for summary judgment where made part of the record by stipulation. (*Saporta* v. *Barbagelata* (1963) 220 Cal.App.2d 463, 469 [33 Cal.Rptr. 661].) Under the circumstances of this case, however, the mere references to "pleadings, records and files" in the notice of motion, and to "the papers or records on file or lodged with the Clerk" in the designation of papers or records on appeal, will not suffice to show that the entire depositions were received as exhibits or evidence at the hearing and therefore should be considered on this appeal. Review is limited to those portions of the depositions which were abstracted and placed before the court in the affidavit and in the declaration filed in connection with the motion.

*Principles governing summary judgment*

In *R. D. Reeder Lathing Co.* v. *Allen* (1967) 66 Cal.2d 373 [57 Cal.Rptr. 841, 425 P.2d 785], the rules governing consideration of a motion for summary judgment were tersely stated as follows: ■ "In considering a motion for summary judgment the trial court must determine whether the [opponent] has by affidavit presented any facts that give rise to a triable issue. [Citations.] ■ The court does not resolve

conflicting factual allegations, for the purpose of the procedure is to discover whether the parties have evidence requiring assessment at a trial. ▊ Such summary procedure is drastic and should be used with caution so that it does not become a substitute for trial. [Citations.] ▊ Accordingly, the affidavits of the moving party are strictly construed and those of his opponent, even if in conclusionary terms, are liberally construed. ▊ Summary judgment is proper only if the affidavits in support of the moving party are sufficient to sustain a judgment in his favor and his opponent does not by affidavit show facts sufficient to present a triable issue.'' (66 Cal.2d at pp. 376-377. See also *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; *Eagle Oil & Refining Co.* v. *Prentice* (1942) 19 Cal.2d 553, 555-556 [122 P.2d 264]; *Chavez* v. *Carter* (1967) 256 Cal.App.2d 577, 580 [64 Cal.Rptr. 350]; *Perry* v. *Zabriskie* (1966) 246 Cal.App.2d 477, 478 [54 Cal.Rptr. 759]; *Garlock* v. *Cole* (1962) 199 Cal.App.2d 11, 14-15 [18 Cal.Rptr. 393]; *Buffalo Arms, Inc.* v. *Remler Co.* (1960) 179 Cal.App. 2d 700, 702-703 [4 Cal.Rptr. 103]; and *Thornton* v. *Victor Meat Co., supra,* 260 Cal.App.2d 452, 456-457, and cases collected fn. 6.)

In the context of this case it must be determined on the record whether or not the action is barred as a matter of law, and whether there is some issue of fact as to the time to commence the computation of the period of limitations.

*Application of the statute of limitations*

The original complaint alleged that after December 7, 1960, ''on many diverse occasions and until on or about the 21st day of January, 1964 the plaintiffs'' minor son, wife and daughter, ''would from time to time become violently ill and nauseated, and on some occasions become unconscious and hospitalized.'' The extracts from the depositions sustain the unimpeached conclusion that injuries to the health of the wife, daughter and son, and attendant expense to the husband commenced almost four years prior to the time the action was filed.

It is not clear from either the allegations of the original complaint or of the amended complaint, or from the extracts of the depositions, whether there was one continuing or cumulative illness, or separate illnesses. The use of the phrase ''on many diverse occasions'' in connection with the claim of each

of the plaintiffs in both the original and amended complaint suggests, if not compels, the conclusion that the illnesses were separately incurred on separate occasions. The testimony of the wife that certain pains "developed" is not necessarily inconsistent with such a conclusion since separate incidents may have been involved in the development.

It is alleged and not controverted that the injuries complained of, whenever they occurred (within one year of the filing of complaint, according to the allegation of the amended complaint of the adult plaintiffs) were the proximate result of gas leaking from the furnace and permeating the house. Defendants' breach of duty is predicated upon negligence in the manufacture, installation, inspection and testing of the furnace, and upon breach of an express and implied warranty. The testimony which was placed before the court indicated that plaintiffs throughout their tenancy had reason to believe that gas was leaking and permeating the house. The husband acknowledged that his daughter and her friends had said they smelled gas upon entering the house. He explained that "the odor of gas is something that you soon get over with," and that the complaints did not continue after guests were in the house a few minutes. The daughter's testimony was to the same effect.

The plaintiffs do not seriously question the foregoing facts and conclusions. In the declaration filed on their behalf it was pointed out that according to the wife's testimony the source of the gas, the leak in the valve in the furnace, was not discovered until January 14th or 15th, 1964. In the original complaint they alleged: "That said illness of said plaintiffs as aforesaid was unexplained and undetermined until on or about the 21st day of January 1964 when it was discovered and determined that as a direct and proximate result of said dangerous and defective furnace, gas had been permeating the said premises and poisoning the said plaintiffs." The trial court in sustaining the demurrer observed, "absent . . . the delay in filing the complaint, the complaint is defective." In their amended complaint the plaintiffs did not elaborate on their original allegations. The adult plaintiffs withdrew all claims for injuries which were suffered more than one year prior to filing the complaint, and merely alleged: "That on or about January 21, 1964, it was determined that gas had been leaking from said dangerous and defective furnace, and plaintiff [husband] is informed and believes and upon such information and belief alleges that between November 27, 1963, and

January 21, 1964, said gas had been permeating the said premises and poisoning the said plaintiffs.''

 From the foregoing it may be concluded that the adult plaintiffs had knowledge more than one year prior to the filing of the complaint that they were subject to recurring illnesses; and that they had reason to believe that there was gas escaping into the premises. Plaintiffs apparently contend that they had no knowledge or reason to believe defendants were responsible for the escaping gas until the leak was discovered in 1964, and that they had no knowledge or reason to discover the illnesses were occasioned by gas until that time. Both of these questions appear to be questions of fact on the record. Their significance in determining whether a motion for summary judgment was proper, depends on their relevance under applicable principles of substantive law.

 Preliminarily, it should be noted that the one-year limitation of subdivision 3 of section 340 of the Code of Civil Procedure is applicable to the claims for damages for personal injuries whether predicated on negligence or breach of an express or an implied warranty. In *Mack* v. *Hugh W. Comstock Associates, Inc.* (1964) 225 Cal.App.2d 583 [37 Cal. Rptr. 466], the court stated: ''The complaint alleged breaches of both express and implied warranties and consequential damages to person and property. Code of Civil Procedure section 337, subdivision 1, would cover the express warranties and provides a four-year statute of limitations. Code of Civil Procedure section 339, subdivision 1, would cover the implied warranties and provides a two-year statute. (*Riesen* v. *Leeder*, 193 Cal.App.2d 580 [14 Cal.Rptr. 469].) However, we believe that where the damages to person or property, in addition to the warranted product, result from a breach of warranty, the more specific sections of Code of Civil Procedure sections 340 and 338 relating to the tortious injury or damage to person or property determine the statutory period (*Lai Wum Chin Mock* v. *Belfast Beverages*, 193 Cal.App.2d 770, 772-773 [14 Cal.Rptr. 602]; *Strzelczyk* v. *Marki*, 169 Cal.App.2d 703 [337 P.2d 846]; *Rubino* v. *Utah Canning Co.*, 123 Cal.App.2d 18 [266 P.2d 163].)'' (225 Cal.App.2d at pp. 588-589. See, in addition to the cited cases, *Rodibaugh* v. *Caterpillar Tractor Co.* (1964) 225 Cal.App.2d 570, 572-573 [37 Cal.Rptr. 646].)

 ''Section 312, Code of Civil Procedure, introducing the limitation provisions in the code, provides that civil actions can only be commenced within the specified periods 'after the cause of action shall have accured.' A cause of

action accrues at the moment the party who owns it is entitled to bring and prosecute an action thereon. [Citations.] Generally, the right to bring and prosecute an action arises immediately upon the commission of the wrong claimed, and the statute of limitations runs from that time; thus, a cause of action in tort arises when the wrongful act is committed, not at the time of discovery of the act." (*Collins* v. *County of Los Angeles* (1966) 241 Cal.App.2d 451, 454 [50 Cal.Rptr. 586]. See also *Strzelczyk* v. *Marki* (1959) 169 Cal.App2d 703, 705 [337 P.2d 846]; and *Sonbergh* v. *MacQuarrie* (1952) 112 Cal.App.2d 771, 773-774 [247 P.2d 133].) Where personal injury is claimed as the proximate result of a defective product or defective condition created by the defendant, the cause of action does not accrue until the date of injury, and computation of the one-year period of limitations commences at that time. (*Rodibaugh* v. *Caterpillar Tractor Co., supra,* 225 Cal.App.2d 570, 573; *Strzelczyk* v. *Marki, supra,* at p. 705; *Rubino* v. *Utah Canning Co.* (1954) 123 Cal.App.2d 18, 27-28 [266 P.2d 163]; and see *Lai Wum Chin Mock* v. *Belfast Beverages, Inc.* (1961) 193 Cal.App.2d 770, 771 and 773 [14 Cal.Rptr. 602]; and Annotation, Limitation Period—Implied Warranty (1954) 37 A.L.R.2d 703, 704.)

 "It is the general rule that the applicable statute of limitations begins to run even though the plaintiff is ignorant of his cause of action or of the identity of the wrongdoer. (1 Witkin, Cal. Procedure (1954) Actions, § 112, p. 615; *Rubino* v. *Utah Canning Co.* (1954) 123 Cal.App.2d 18, 27 [266 P.2d 163])" (*Calabrese* v. *County of Monterey* (1967) 251 Cal. App.2d 131, 141 [59 Cal.Rptr. 224]. See, in addition to authorities cited, *Collins* v. *County of Los Angeles, supra,* 241 Cal.App.2d 451, 455; *Sonbergh* v. *MacQuarrie, supra,* 112 Cal. App.2d 771, 773; and Annotations, Products Liability—Limitations (1965) 4 A.L.R.3d 821; Assault and Battery—Limitations (1963) 90 A.L.R.2d 1230; Limitation—False Arrest—Imprisonment (1956) 49 A.L.R.2d 922.)

From the foregoing it may be concluded that the adult plaintiffs cannot recover for personal injuries suffered more than one year prior to the filing of the complaint even though they were ignorant of the source of those injuries. (*Rubino* v. *Utah Canning Co., supra,* 123 Cal.App.2d 18, 27-28.) Furthermore, when the fact of injury and the identity of the party responsible for it are known, the failure to discover some or most of the resulting damage until later will not toll

the running of the statute. (*Strzelczyk* v. *Marki, supra,* 169 Cal.App.2d 703, 705; *Sonbergh* v. *MacQuarrie, supra,* 112 Cal. App.2d 771, 773-774; and see *Collins* v. *County of Los Angeles, supra,* 241 Cal.App.2d 451, 457-458.)

Plaintiffs seek to overcome or circumvent the application of the aforementioned principles to all of the injuries of which they complain by resort to the rule applied to diseases or injuries which are cumulative in nature. In *Associated Indem. Corp.* v. *Industrial Acc. Com.* (1932) 124 Cal. App. 378 [12 P.2d 1075], the court affirmed a compensation award for disability from silicosis, and approved and adopted an opinion of the Industrial Accident Commission containing the following recital: ". . . the afflicted employee can be held to be 'injured' only when the accumulated effects of the deleterious substance manifest themselves, . . ." (124 Cal.App. at p. 381 [adopted and approved in *Urie* v. *Thompson* (1949) 337 U.S. 163, 170 [93 L.Ed. 1282, 1292, 69 S.Ct. 1018, 11 A.L.R.2d 252]. See also Lab. Code, § 5412; *Coots* v. *Southern Pac. Co.* (1958) 49 Cal.2d 805, 809-810 [322 P.2d 460]; *Marsh* v. *Industrial Acc. Com.* (1933) 217 Cal. 338, 351 [18 P.2d 933, 86 A.L.R. 563]; *Argonaut Ins. Co.* v. *Industrial Acc. Com.* (1964) 231 Cal.App.2d 111, 116-118 [41 Cal.Rptr. 628]; *Beveridge* v. *Industrial Acc. Com.* (1959) 175 Cal.App.2d 592, 594-597 [346 P.2d 545]; *Young* v. *Clinchfield R.R. Co.* (4th Cir. 1961) 288 F.2d 499, 502; *Ricciuti* v. *Voltarc Tubes, Inc.* (2d Cir. 1960) 277 F.2d 809, 813; and *Sylvania Elec. Products* v. *Barker* (1st Cir. 1955) 228 F.2d 842, 848; but *cf. Turudich* v. *Industrial Acc. Com.* (1965) 237 Cal.App.2d 455, 457 [47 Cal. Rptr. 21]; and see generally, Annotations, Limitations— Contracting Disease (1950) 11 A.L.R.2d 277; and Products Liability—Limitations (1965) 4 A.L.R.3d 821, 836; Comment, Developments in the Law, Statutes of Limitations (1950) 63 Harv.L.Rev. 1177, 1203-1207.) The principle has been applied in cases seeking damages for disease—cancer—caused by the use of tobacco. (*R. J. Reynolds Tobacco Co.* v. *Hudson* (5th Cir. 1963) 314 F.2d 776, 785-786; *Mitchell* v. *American Tobacco Co.* (M.D.Pa. 1960) 183 F.Supp. 406, 411; and see Note (1964) 77 Harv. L.Rev. 1343.)

It is unnecessary to determine to what extent, if any, the rule of commencing the limitation period with the discovery of·the· disease, in the case of a disease which is the result of a succession of acts or exposures, should be applied to a negligence, as distinguished from a compensation, action. Neither the original nor the amended complaint purports to allege

cumulative injuries. The latter only seeks recourse for injuries arising within the one-year period, and refers to illnesses on ''diverse occasions,'' rather than illness or disease resulting from cumulative exposure.

 To the same end, plaintiffs rely on the rule that actions for medical malpractice will not be barred where the patient could not have discovered the injury through reasonable diligence prior to one year before commencing his action. (See *Stafford* v. *Shultz* (1954) 42 Cal.2d 767, 775-780 [270 P.2d 1]; *Huysman* v. *Kirsch* (1936) 6 Cal.2d 302, 312-313 [57 P.2d 908]; *Garlock* v. *Cole, supra,* 199 Cal.App.2d 11, 15; *Mock* v. *Santa Monica Hospital, supra,* 187 Cal.App.2d 57, 64; *Hundley* v. *St. Francis Hospital* (1958) 161 Cal.App.2d 800, 805-807 [327 P.2d 131, 80 A.L.R.2d 360]; *Hemingway* v. *Waxler* (1954) 128 Cal.App.2d 68, 70 [274 P.2d 699]; *Costa* v. *Regents of University of California* (1953) 116 Cal.App.2d 445, 454-455 [254 P.2d 85]; *Bowman* v. *McPheeters* (1947) 77 Cal.App.2d 795, 798-804 [176 P.2d 745]; *Pellett* v. *Sonotone Corp.* (1942) 55 Cal.App.2d 158, 160 [130 P.2d 181]; and *Trombley* v. *Kolts* (1938) 29 Cal.App.2d 699, 709 [85 P.2d 541].) The principle has been broadly stated that the running of the statutory period depends upon ''when the plaintiff discovered his injury *and* its actionable origin, or should have discovered them by exercise of reasonable care. . . .'' (*Costa* v. *Regents of University of California, supra, at* p. 455; italics added. See also *Huysman* v. *Kirsch, supra,* at pp. 312-313; *Garlock* v. *Cole, supra,* 199 Cal.App.2d 11, 15; *Mock* v. *Santa Monica Hospital, supra,* at p. 64; *Hundley* v. *St. Francis Hospital, supra,* at p. 806.) Examination of the cited authorities shows, however, that they are predicated on fact and theory which reveal a fraudulent concealment because of the physician's duty to make a full disclosure to his patient (see *Stafford* v. *Shultz, supra,* at pp. 777-779; *Garlock* v. *Cole, supra,* at pp. 15-16; *Hundley, supra,* at pp. 806-807; *Costa, supra,* at p. 455; *Bowman* v. *McPheeters, supra,* at pp. 798-804); or that they depend upon a theory of a continuing wrong measured by the time the patient remains under treatment by the physician (see *Mock, supra,* at p. 64; *Hundley, supra,* at p. 806; *Hemingway* v. *Waxler, supra,* at p. 71; *Trombley* v. *Kolts, supra,* at p. 708); or, in cases where a substance is left within the body, on the theory that there is a continuing wrong measured by the time the substance remains in the body, because the attempted treatment or operation

remains incomplete (see *Huysman* v. *Kirsch, supra,* at p. 310; *Trombley, supra,* at pp. 708-709), or because the negligence is deemed to continue (*Huysman, supra,* at p. 311; *Pellett* v. *Sonotone Corp., supra,* at pp. 160-161).

In this case it is true that the record fails to foreclose the plaintiffs from showing that they were ignorant of the cause of the injuries of which they complain, and ignorant of the fact that the alleged cause which was the gas, had been released because of the act or omission of the defendants. Nevertheless, there is nothing to suggest that there was any fiduciary relationship between any of the defendants and the plaintiffs, nor that there was any fraudulent concealment on the part of either defendant. The most that can be said is that there was a duty on the part of the manufacturer and the landlord to furnish the tenants, as occupants, with a heating system which functioned without hazard. The extent to which this duty was a continuing one is a decisive factor in this case.

The defendants claim that the principles of the above malpractice cases are limited to the field of medical science, because it has expressly been repudiated in the field of legal malpractice. In *Alter* v. *Michael* (1966) 64 Cal.2d 480 [50 Cal.Rptr. 553, 413 P.2d 153], the court reaffirmed that actions for legal malpractice are governed by the two-year period specified in subdivision 1 of section 339 of the Code of Civil Procedure with respect to "An action upon a contract, obligation or liability not founded upon an instrument of writing, . . ." It is obvious that, except under exceptional circumstances, the negligence of the attorney would not produce grounds for "An action . . . for injury to or for the death of one caused by the wrongful act or neglect of another, . . ." (Code Civ. Proc., § 340, subd. 3.) The specifics of the latter provision control where the gravamen of the complaint is the damage for personal injuries. (*Marty* v. *Somers* (1917) 35 Cal.App. 182, 183 [169 P. 411]. *Accord*: *Huysman* v. *Kirsch, supra,* 6 Cal.2d 302, 306; *Harding* v. *Liberty Hospital Corp.* (1918) 177 Cal. 520, 522-524 [171 P. 98], and see discussion above regarding injuries from breach of express or implied warranty.) In *Alter,* the court, in commenting on the difference between actions for legal and medical malpractice observed, "We note, however, the rule that the one-year period applicable to a medical malpractice action does not commence to run until the patient discovers his injury or through the use of reasonable diligence should have discov-

ered it [citations], whereas the two-year period which governs a legal malpractice action runs from the time of the negligent acts [citation]. In this respect the rules could be viewed as discriminating in favor of lawyers." (64 Cal.2d at p. 483. See also *Chavez* v. *Carter, supra,* 256 Cal.App.2d 577, 580; *Eckert* v. *Schaal* (1967) 251 Cal.App.2d 1, 5 [58 Cal.Rptr. 817]; *Fazio* v. *Hayhurst* (1966) 247 Cal.App.2d 200, 203 [55 Cal.Rptr. 370]; *Shelly* v. *Hansen* (1966) 244 Cal.App.2d 210, 213 [53 Cal.Rptr. 20]; *Bustamante* v. *Haet, supra,* 222 Cal. App.2d 413, 414-415; *Griffith* v. *Zavlaris* (1963) 215 Cal.App. 2d 826, 828-831 [30 Cal.Rptr. 517]; Annotation, Limitations— Attorney—Negligence (1956) 49 A.L.R.2d 1216.)

It is unnecessary and improper to determine in this case what circumstances, if any, may delay the accrual of an action for legal malpractice beyond the initial negligent act or omission. It is noted, however, that in some cases consideration has been given to the question of whether the victim had means to discover the attorney's breach of duty and the resulting injury. (See *Bustamente* v. *Haet, supra,* at pp. 415-416; and *Wheaton* v. *Nolan* (1934) 3 Cal.App.2d 401, 403 [39 P.2d 457].) The possible application of the principle of fraudulent concealment has also been acknowledged. (See *Eckert* v. *Schaal, supra,* at p. 5; *Bustamante* v. *Haet, supra,* at p. 416; *Jensen* v. *Sprigg* (1927) 84 Cal.App. 519, 522-526 [258 P. 683].) In *Lally* v. *Kuster* (1918) 177 Cal. 783 [171 P. 961], the court held that where the attorney's misfeasance consisted of delay, the cause of action could not be said to arise until the delay resulted in some injury (p. 791). Other cases have applied the principle of the continuing obligation of the attorney to delay the accrual of the running of the limitations period. (See *Chavez* v. *Carter, supra,* 256 Cal. App.2d 577, 581 and 582; *Fazio* v. *Hayhurst, supra,* 247 Cal.App.2d 200, 203; and *Shelly* v. *Hansen, supra,* 244 Cal. App.2d 210, 213 and 215.)

The legal malpractice cases do not, as urged by defendants, indicate a trend to limit the time of accrual of a cause of action to the initial misfeasance. In fact, it has been recognized that the rule generally in such actions is a "harsh" rule and should not be extended to other fields. In *Moonie* v. *Lynch* (1967) 256 Cal.App.2d 361 [64 Cal.Rptr. 55], the question was stated as follows: "Does the statute of limitations in an action for alleged malpractice by an accountant start to run from the alleged negligent act, from discovery of the negligence, or from the date when defendant was notified

of the income tax penalty assessment?'' The court summarized the law as follows: ''The statute in physician malpractice cases does not begin to run until discovery of the injury. *Huysman* v. *Kirsch* (1936) 6 Cal.2d 302 [57 P.2d 908]. In attorneys' malpractice cases the statute commences to run when the negligent act occurs. (*Griffith* v. *Zavlaris* (1963) 215 Cal.App.2d 826 [30 Cal.Rptr. 517].) In insurance agent malpractice the statute does not start to run until a judgment against the intended insured which the neglected insurance was intended to cover has been obtained. (*Walker* v. *Pacific Indem. Co.* (1960) 183 Cal.App.2d 513 [6 Cal.Rptr. 924])'' (*Id.* p. 363.) After reviewing other authorities it concluded: ''. . . we see no reason to apply the 'harsh' rule of the attorney's malpractice cases to this case. The circumstances of this case (assuming that the allegations of the cross-complaint are true and that defendant filed this action within two years of the discovery of the alleged negligence, or the time when with reasonable diligence he should have discovered it) cry aloud for a rule which would not have required defendant to have brought his action in a period before he could have known that plaintiff had been negligent and that he, the defendant, had been injured. We, therefore, hold that in a malpractice action against an accountant the statute of limitations does not run until the negligent act is discovered, or with reasonable diligence could have been discovered.'' (*Id.*, pp. 365-366. See also Note (1957) 15 U.C.L.A. L.Rev. 230.)

Concededly there are several possible points of time at which the limitations period might be regarded as commencing, such as the time the furnace was manufactured, the time it was installed, the time at which the first injury occurred, or the time at which the first and subsequent injuries were discovered. The choice between when the defendant commits his wrong or when substantial injury occurs is generally unnecessary because the two events are simultaneous in most cases. The complexity of the choice is brought about by the expiration of time between the chargable act or omission, and the subsequent injury.

''In resolving the question of the correctness of the court's order the legislative policy in prescribing a period of limitation for the commencement of actions must be borne in mind. 'The statute of limitations is a statute of repose, enacted as a matter of public policy to fix a limit within which an action must be brought, or the obligation is presumed to have been

paid, and is intended to run against those who are neglectful of their rights, and who fail to use reasonable and proper diligence in the enforcement thereof. . . . These statutes are declared to be ''among the most beneficial to be found in our books.'' ''They rest upon sound policy, and tend to the peace and welfare of society''; . . . The underlying purpose of statutes of limitations is to prevent the unexpected enforcement of stale claims concerning which persons interested have been thrown off their guard by want of prosecution.' (1 Wood, Limitations, pp. 8-9.)'' *(Pashley* v. *Pacific Elec. Ry. Co.* (1944) 25 Cal.2d 226, 228-229 [153 P.2d 325].) If the plaintiffs' allegations of lack of knowledge are sustained they cannot be accused of being neglectful of their rights or of using reasonable and proper diligence to enforce them. It is not the policy of the law to unjustly deprive one of his remedy. On the other hand, if the proof shows knowledge or cause for knowledge there is no policy which requires protection of the plaintiffs.

In the instant case the wrongful conduct is alleged to consist of the failure to furnish a heating system which did not permit the escape of gas. The initial act or omission presumably occurred prior to the commencement of the plaintiffs' tenancy. There is, however, a continuing duty on the landlord to furnish the tenant a safe place to reside. The manufacturer's duty can be said to have arisen when it installed the furnace and any delict would stem from that date. Nevertheless, it has been recognized that a cause of action for an express or implied warranty may accrue at a date subsequent to the sale or delivery.

In *Aced* v. *Hobbs-Sesack Plumbing Co.* (1961) 55 Cal.2d 573 [12 Cal.Rptr. 257, 360 P.2d 897], the court overruled the contention that an action on an express warranty was barred upon the expiration of four years from the installation of a radiant heating system. The court observed, ''We are satisfied . . . that this is a case which could properly be found to come within the operation of the principle that, if a warranty relates to a future event before which the defect cannot be discovered by the exercise of reasonable diligence, the warranty, though accompanied by a representation as to present condition, is prospective in character and the statute of limitations begins to run as of the time of that event. This principle, while not always stated in identical language, has been applied in a variety of factual situations. [Citations.] . . . the principle in question has been followed with respect

to implied as well as express warranties, and it has long been recognized in this state that the time when the statute of limitations begins to run is the same whether a warranty is express or implied. [Citation.]'' (55 Cal.2d at pp. 583-584. See also *Riesen* v. *Leeder* (1961) 193 Cal.App.2d 580, 582 [14 Cal.Rptr. 469]; and *Southern Cal. Enterprises, Inc.* v. *D. N. & E. Walter & Co.* (1947) 78 Cal.App.2d 750, 753-759 [178 P.2d 785].) The question of whether the plaintiffs discovered or should have discovered the defect in the furnace is a question of fact. (*Garlock* v. *Cole, supra,* 199 Cal.App.2d 11, 16-17; *Hemingway* v. *Waxler, supra,* 128 Cal.App2d 68, 70; *Costa* v. *Regents of University of California, supra,* 116 Cal. App2d 445, 455; *Bowman* v. *McPheeters, supra,* 77 Cal.App. 2d 795, 802; and see *Aced* v. *Hobbs-Sesack Plumbing Co., supra,* at pp. 584-585.)

In this case there are two factors. First, are the plaintiffs barred from raising the original delict, the leak, allegedly attributable to the installer and the landlord? *Aced* suggests that no cause of action arises until it is discovered or should have been discovered. (55 Cal.2d at p. 584.) There is evidence to suggest that it should have been discovered, but this question should be resolved by a trial on the merits. *Rodibaugh* holds that there is no cause of action for personal injuries until such injury occurs. (225 Cal.App.2d at p. 573.) The second question is whether the action for personal injuries would be barred in any event. If the injury incurred within one year of filing suit was a separate injury, there is no reason to find that a cause of action accrued earlier. If in *Rubino, supra,* the plaintiff in ignorance of the cause of the original malady, ingested a second can of the contaminated food product and suffered a second illness, would he be barred if he brought suit within one year? Suppose on the second occasion he shared his fare and his illness with another member of his family, would the latter be barred? Each should be able to sue for the injury suffered within the statutory period. The prior illness might be some evidence of contributory negligence with respect to the original sufferer's case, but if a different injury, recovery should not be barred by the existence of the earlier undiagnosed illness.

The damages sought for personal injuries are, as noted in *Mack* v. *Hugh W. Comstock Associates,* for damage consequential to the breach of warranty, but if action on an implied or express warranty is not barred, the plaintiffs should be able to recover the consequential damages suffered

within one year prior to the filing of the complaint. (225 Cal..App.2d at p. 590.) In *Chavez* v. *Carter, supra,* where the court recognized the continuing duty of the attorney, the opinion states: "It is true that, since a two-year statute of limitation applies, plaintiff can recover only those damages which occurred within that period and he is barred from recovery of damages prior to June 16, 1963. But that limitation is one to be applied after a trial; it does not operate to support a judgment dismissing the action in its entirety." (256 Cal.App.2d at p. 582.)

*Strzelczyk* v. *Marki, supra,* does not compel a contrary conclusion. In that case this court held that the plaintiff could not rely upon the principle that a continuing nuisance gives rise to successive wrongs. (169 Cal.App.2d at pp. 704-705. Cf. *Phillips* v. *City of Pasadena* (1945) 27 Cal.2d 104, 107-108 [162 P.2d 625].) The court, however, applied the general doctrine that an action for personal injuries accrues when the injury occurs, and stated: "Nowhere in the complaint do plaintiffs allege the commission of separate wrongful acts. The complaint shows that the wrongful acts occurred not later than January 15, 1953, the date when plaintiff Marie is alleged to have become sick by reason of defendant's acts. (The original complaint was filed May 25, 1956.)" (169 Cal.App.2d at p. 705.) In this case it was originally alleged that there were diverse injuries, and plaintiffs now only seek to recover for such injuries as occurred within one year of filing suit. They should be permitted to show that such injuries were separately incurred. (*Wright* v. *Carter Products Inc.* (2d Cir. 1957) 244 F.2d 53, 63; and see *Rodibaugh* v. *Caterpillar Tractor Co., supra,* 225 Cal.App.2d 570, 572-573; *Chitty* v. *Horne-Wilson, Inc.* (1955) 92 Ga.App. 716, 719 [89 S.E.2d 816]; *Gile* v. *Sears, Roebuck & Co.* (1952) 281 App. Div. 95 [120 N.Y.S.2d 258], rehearing and appeal denied, 281 App.Div. 930 [120 N.Y.S.2d 255]; *Kitchener* v. *Williams,* (1951) 171 Kan. 540, 543-553 [236 P.2d 64]; *Theurer* v. *Condon* (1949) 34 Wn.2d 448, 454-455 [209 P.2d 311]; and *Heath* v. *Moncrief Furnace Co.* (1931) 200 N.C. 377, 381 [156 S.E. 920]; but cf. *Matthieu* v. *Piedmont Nat. Gas. Co.* (1967) 269 N.C. 212, 215-217 [152 S.E.2d 336].)

This is not to say that upon trial the facts may not show that plaintiffs knew or should have known at an earlier date that the furnace was defective, and that they knew or should have known that their injuries resulted therefrom. These are matters of defense and do not defeat the right to sue for a

separate injury if such in fact was incurred within one year of filing suit. The following comment is pertinent: "This discussion should not conclude without underscoring that, in liberally construing and asserting the depositions most favorably to appellant (as we are required to do), we are stating that which has not yet been proved and may never be. We have merely accepted the appellant's story. Summary judgment and demurrer reversals are untrustworthy source materials for fact finders." (*Garlock* v. *Cole, supra,* 199 Cal.App.2d 11, 17.)

*Constructive eviction*

▆▆ Plaintiff-parents contend that since the one-year limitation does not apply to an action for constructive eviction, there is nothing in the record to show that their action against the landlord is barred. The record before the court shows that plaintiffs did not vacate the premises, but remained in them (and suffered the injuries of which they complain) during all of the period for which they seek to recover rent. Under these circumstances, there can be no recovery of the rent paid. (*Sill Properties, Inc.* v. *CMAG, Inc.* (1963) 219 Cal.App.2d 42, 50-51 [33 Cal.Rptr. 155]; *Lori, Ltd.* v. *Wolf*e (1948) 85 Cal.App.2d 54, 65-66 [192 P.2d 112]; and see *Kulawitz* v. *Pacific etc. Paper Co.* (1944) 25 Cal.2d 664, 670 [155 P.2d 24].)

Since the judgments must be reversed with respect to the other counts, the judgment on this count will fall, but the order granting defendant Bennett's motion may stand with respect to this count for incorporation in such final judgment as may be entered in the action.

The judgments are reversed, and the case is remanded for hearing on defendants' special demurrers, and such further proceedings as are consistent with the views expressed herein.

Molinari, P. J., and Elkington, J., concurred.