### SMITH *et al. v.* FRAZER.

Under the evidence in the case it was not error to direct a verdict for the plaintiff.

SEPTEMBER 15, 1915.

Complaint. Before Judge Mathews. Bibb superior court. August 29, 1914.

*Feagin & Hancock,* for plaintiffs in error.

*Ryals & Anderson,* contra.

BECK, J. E. P. Frazer brought suit against J. A. Smith and J. W. Callaway on their joint promissory note for $1200, dated October 18, 1912, and due four months after date. The defendants admitted the execution of the note, but pleaded, in defense thereto, partial failure of consideration on account of an alleged deficiency in the quantity of certain corn and stover which constituted a part of the consideration for which the note was given; and they sought to recoup damages against the plaintiff on account of said deficiency in quantity of goods purchased, both for the contract price of the alleged deficiency in quantity and for the difference between the contract price and the market value thereof. The evidence for both sides showed that the corn and stover alleged to be deficient in quantity were, at the time of the sale and execution of the note, located on plaintiff's farm, and in shocks in the field where it was grown. The defendants both testified, that, in agreeing to buy the farm products in question, they relied upon statements of the quantity of the various articles embraced in the contract of sale, made by the plaintiff to them, and shown by

memoranda made and delivered by him to them. According to the testimony of Callaway, one of these memoranda was made by Frazer a day or two before the contract of sale was consummated, when Smith was not present, and at Callaway's request Frazer detached the leaf containing these memoranda and gave it to Callaway in order that he might go over it with Smith. A day or two thereafter Callaway and Smith returned together to Frazer's farm, bringing the first memorandum with them, and negotiations were resumed, during which Frazer made the other memorandum. Both these memoranda were in the possession of the defendants at the trial, and were introduced in evidence by them. The plaintiff testified that both of them were made prior to the day on which the sale was consummated. Callaway testified in part as follows: "I did not know it was an estimate from Dr. Frazer, because his statement could be based on what he gathered. Whether his statement was based on the corn he gathered or any other theory, it was obliged to be an estimate. I knew he hadn't measured it; he could not. I knew he hadn't weighed the stover we were buying. It was Dr. Frazer's estimate as to the quantity there, but we were not buying it that way. I had been to Dr. Frazer's farm three or four times before we made this purchase. I had not been closer to the corn and stover shocked in the field than the house and road. I saw it from the road and house. I did not know how many acres there were of it. I could not see the entire field where it was shocked. Mr. Smith was present at the time. . . I will not say that Dr. Frazer estimated the last five articles on the memorandum, and he said he would whack them half in two, because he had it listed out in plain figures; he says, I will whack it in two on the corn and stover; the price of it, the amount, not the quantity; he could not have intended to divide the quantity in half, because he said it was there." Smith testified as follows: "I saw the corn was shocked up in the field, and I knew that was the condition of it when we bought it. I also knew the cotton was in the field; and I also knew the potatoes were in the ground and not gathered. Dr. Frazer went over the memorandum with us that he had, item by item. I don't know that Dr. Frazer said how much cotton there was, but priced it at $125; he didn't undertake to say how much cotton there was there, but estimated the value of it. I don't know how many potatoes

he said there was. . . Dr. Frazer estimated the potatoes as being worth fifty dollars, but I don't know how many potatoes. I don't know how many potatoes we got. I saw Dr. Frazer had figured full value for the oats and cottonseed and wheat and peas and hay. After going over the items Dr. Frazer offered, as an inducement, to cut in half the last five items on the memorandum, so we could make some money on it; and after doing that he cut it down to even twelve hundred dollars. Dr. Frazer did not tell us he had measured up the corn or stover. I knew he could not have measured it while in the field. . . I relied absolutely on what he said about it. I knew something about corn, but this was in the shock. I could not tell as much about how much corn was there in the shocks as Dr. Frazer, because he was familiar with it."

The plaintiff's testimony tended to show that the memorandum which he submitted to the defendants was purely an estimate, and that he sold the farm products by these memoranda merely as an estimate, and made no warranty as to amount. He testified, in part, as follows: "Mr. Callaway and myself made up this estimate on my porch at my farm, and it was given to Mr. Callaway the day before he signed the note, and he brought it to town to show to Mr. Smith, and they came back the next morning. That was not the first time I had ever mentioned selling this produce to them. I had mentioned it several times before. . . Smith and Callaway went over the place and looked at the stover, and after I agreed to cut it in two they took it that quick. The final sale was not 975 bushels of corn, but just half of it. Here is where I divided them all in half. I estimated the corn at fifteen bushels an acre, and then I cut it in half and made it seven and a half bushels an acre; and then they took it. I don't know how much corn was there. That was the first year I harvested corn that way. . . I estimated they would get a ton off of every acre, and that made sixty-five tons; and I figured on the government estimate of forty per cent. of corn. . . Mr. Smith saw the bin the oats were in; and he saw the peas through the window; he didn't measure them. Smith and Callaway and myself did not go through the entire corn; we went through part of it; it was not necessary to go over it all; they had been over the whole farm."

The court directed a verdict for the plaintiff. We are of the opinion that the court properly so directed. Considering the testi-

mony of the defendants themselves, in the light of all the facts and circumstances proved; it demonstrates beyond question that they knew that the memoranda of the articles which the plaintiff was selling to them was a mere estimate, and that there was no warranty upon the part of the plaintiff as to the amount of the corn, stover, and other products which he was selling to them. The defendants saw the corn and stover and had an opportunity of making an estimate for themselves. Benjamin, in his work on Sales, lays down this test for determining whether or not a warranty was intended: "A decisive test is whether the vendor assumes to assert a fact of which the buyer is ignorant, or merely states an opinion or judgment upon a matter upon which the vendor has no special knowledge, and on which the buyer may be expected also to have an opinion, and to exercise his judgment. In the former case there is a warranty, in the latter not." Benj. Sales (5th ed.), 659. In 30 Am. & Eng. Enc. Law, 142, the following test is stated: "The decisive test, in determining whether language used is a mere expression of opinion or a warranty, is whether it purported to state a fact upon which it may fairly be presumed the seller expected the buyer to rely and upon which a buyer would ordinarily rely. If the language used is of that character, the fact of reliance on the part of the buyer and the presumption of intent on the part of the seller which the law would raise in such a case would operate to create a warranty." "Representations which merely express a vendor's opinion, belief, judgment or estimate do not constitute a warranty." 35 Cyc. 383. *Ragsdale* v. *Shipp,* 108 *Ga.* 817 (34 S. E. 167); *Baldwin* v. *Daniel,* 69 *Ga.* 782 (5). The fact that the memoranda stating the amounts were in writing does not constitute an express warranty. This fact no more makes an express warranty than the statement of an amount made orally.

Under the evidence no other conclusion could properly be reached than that the statement furnished by the vendor was merely an estimate, known and accepted as such by the vendees, and that no warranty was intended. Under the evidence of the defendants themselves, the only proper verdict that could have been rendered was one for the plaintiff for the full amount of the note sued on; and the court did not err in directing the jury accordingly.

*Judgment affirmed.   All the Justices concur, except Fish, C. J., absent.*