27714. SNOW'S LAUNDRY AND DRY CLEANING COMPANY *v.* GEORGIA POWER COMPANY.

DECIDED NOVEMBER 30, 1939. REHEARING DENIED DECEMBER 16, 1939.

*Young & Carnes,* for plaintiff in error.
*Foley & Chappell, Albert W. Stubbs Jr.,* contra.

GUERRY, J. Georgia Power Company filed suit against Snow's Laundry & Dry Cleaning Company, alleging that it furnished to the defendant, during the months of November and December, so many cubic feet of gas at a price agreed on under a written contract attached to the petition, and that defendant failed to pay therefor. It also alleged that it had sold and delivered to the defendant a certain gas-converter outfit for firing a boiler, under a written contract attached, and that there was a named amount due thereunder. Each of these contracts was dated August 18, 1937.

The defendant admitted the execution of the contracts, the installation of the gas-conversion equipment, and the price agreed to be paid for each, and that. the gas was used by it as alleged, but alleged further that on April 8, 1937, the general gas superintendent of the plaintiff company wrote the defendant a letter in which he stated that he had made a study of defendant's plant where he was using coal to determine the equipment necessary to convert it into a gas-firing plant, and referred defendant to several other named concerns for whom the plaintiff had made such changes. This engineer in this letter recommended a named type of equipment, and stated the cost of the same, installed, and attached to his letter a "detailed estimate of the cost of operating your boiler plant as compared with your present cost of coal. This comparison is based on the use of fifty tons of coal per month. . . This comparison shows that you would make a saving of approximately $800 per year by automatic gas firing." In addition, the letter called attention to the elimination of coal dust, ashes, smoke, and soot in the laundry. The estimate of the cost of the gas was $230.50 per month as compared to $307.50 per month for coal. The defendant further answered that, relying on the truth and correctness of said letter and estimates, he entered into the contracts as alleged and installed the equipment on August 20, 1937. He further answered that the gas bill for the first month was $273.15 and that he immediately, made complaint and was informed that the excess over the estimate was caused by numerous leaks in the boiler equipment, and that the "plaintiff adjusted said bill and defendant paid same;" that the gas consumption was always more each month than the estimate, and that the plaintiff had never brought the consumption down; that during the latter part of December it offered to rescind said gas contract and purchase con-

tract, pay plaintiff for gas at the rate of $230.50 per month, and return to plaintiff the gas-firing equipment it had installed, which offer the plaintiff refused to accept; that the plaintiff's representation as to the cost of the gas consumption each month was untrue and the efficiency of the boiler had not been increased, the amount of such cost each month being alleged; that because of the misrepresentation of material facts concerning the use of said gas and gas-firing equipment it entered into the contracts without knowledge of the falsity thereof. "Defendant shows that because of the fraud practiced upon it . . the plaintiff is not entitled to recover any amount of this from defendant . . that the use of gas and gas-firing equipment failed to produce the savings and economies in operation which the plaintiff represented would result therefrom, and as consequence the consideration of said contracts has totally failed . . and by reason of this fact said equipment was not properly and reasonably suited to the purposes and uses for which the plaintiff warranted and represented it. . . Defendant further offers to pay plaintiff the sum of $230.50 per month for gas used and to return the equipment, the use of which it has abandoned."

The evidence for the defendant was that the equipment took more gas to operate than the estimate given by Mr. Spencer. "It cost too much to operate according to what it was supposed to have cost. My complaint was that it cost more to operate than it was presumed to have cost . . outside the expense it cost, so far as running my laundry it performed that service." At the conclusion of the evidence the court directed a verdict for the plaintiff and exceptions are taken to this action.

Conceding that the letter and estimate furnished to the defendant on April 8 were the basis for and a part of the contracts entered into on August 18, did the defendant sustain its defense? It will be seen from the letter that the representation made was an "estimate" based on figures which were set out. No actual or moral fraud is pleaded or proved. On the contrary it was shown by the evidence that the letter was written in the utmost good faith, the writer believing the statements therein made to be true, certain reasons being given as to the making of the estimate, and why there was any failure in their correctness. There was no false representation as to any past or existing fact which was acted upon by the

defendant. The mere breach of a contract does not constitute legal fraud. *Georgia Railroad Co.* v. *Kent,* 92 *Ga.* 782, 785 (19 S. E. 720). The elements of actionable fraud consist of "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." 26 C. J. 1062, § 6. An action of deceit or fraud charges the commission of a tort. *Brooke* v. *Cole,* 108 *Ga.* 251, 252 (33 S. E. 849); *Bates* v. *Forsyth,* 69 *Ga.* 365. "To recover in such an action, it must appear that a representation was made, that it was false to the knowledge of the party making it, or made with the intention to deceive the purchaser." *Brooke* v. *Cole,* supra. It is not alleged or proved that the statement made by Spencer, even if he be regarded as an expert, and was in reference to a discoverable fact, was not bona fide made. In this connection see 26 C. J. 1125. The defense of fraud, if sufficiently pleaded, was not established by any evidence.

Was the representation, made as an estimate of the amount of gas required to operate the heating plant per month, a warranty so as to be actionable for a breach thereof, or so as to authorize or warrant a rescission? For a representation to be construed as a warranty the statement made must be affirmed as a fact; it must be understood by the parties as having that character; it must be positive and unequivocal, and not merely a vague, ambiguous, and indefinite statement of the seller regarding the property. "Representations which merely express a vendor's opinion, belief, judgment or estimate do not constitute a warranty." *Smith* v. *Frazer,* 144 *Ga.* 85, 88 (86 S. E. 225), and cit. The statements made by Spencer were denominated by him as estimates, and nowhere did he warrant or guarantee that the gas consumption would not exceed $230.50 per month. The written contract made between the parties obligated the defendant to pay a named rate per cubic feet of gas consumed. This contract provided: "This contract constitutes the sole and entire agreement between the parties hereto in respect to the subject-matter hereof." The contract for the purchase of the equipment contained the same proviso. If the purchaser had desired or expected the estimate of the amount of gas to be re-

quired to be made a warranty, so that in the event more gas was consumed than had been estimated he would not be required to pay therefor and could turn back the equipment purchased, he should have had the same incorporated in his contract of purchase.

Conceding but not deciding that the letter may be construed as a part of the terms of purchase and the contract entered into, its terms are not such positive statements as would make the same an express warranty. There was certainly no breach of any implied warranty, for the defendant's evidence shows that the only complaint that he had in respect to the equipment was that it cost more than $230.50 per month to operate, and that otherwise it gave entire satisfaction.

Plaintiff in error in its brief contends vigorously that the court should have submitted to the jury the question as to whether the language used amounted to a warranty or not, and quotes from *Smith* v. *Frazer,* supra, as follows: "The decisive test, in determining whether language used is a mere expression of opinion or a warranty, is whether it purported to state a fact upon which it may fairly be presumed the seller expected the buyer to rely and upon which a buyer would ordinarily rely." The language used here repeatedly shows affirmatively that it was given as an opinion or an estimate, and nowhere was it warranted that the plant would use this amount and no more and that the defendant would not be required to pay for any amount in excess of that estimate or could return the property in the event such estimate proved to be untrue.

The court properly directed the verdict for the plaintiff.

*Judgment affirmed. MacIntyre, J., concurs. Broyles, C. J., disqualified.*