The **HERTZ CORPORATION**, Plaintiff-Appellant,

v.

Donald **COX** and Sarah C. Crowe, Defendants-Appellees.

No. 26251.

United States Court of Appeals, Fifth Circuit.

Sept. 2, 1970.

M. W. Parse, Jr., Leon Jaworski, Stephen D. Susman, Houston, Tex., Donald M. Fain, Atlanta, Ga., John Murray, Morris Wolin, New York City, for plaintiff-appellant.

Wade C. Hoyt, Jr., Rome, Ga., Boehl, Stopher, Graves & Deindoerfer, A. J. Deindoerfer, Louisville, Ky., James I. Parker, Cedartown, Ga., Harold L. Murphy, Tallapoosa, Ga., for defendants-appellees.

Before WISDOM and DYER, Circuit Judges, and KRENTZMAN, District Judge.

KRENTZMAN, District Judge:

We reverse and remand for reasons set out more fully below.

In a previous consideration of this case this court considered the question of whether or not the Hertz Corporation, which engages in the business of renting automobiles, could be dismissed from the action, by way of summary judgment on the grounds that Hertz was not present either in person or through an actual agency. At that time this court stated:

"In dismissing the complaint against the Hertz Corporation it is obvious that the trial court did so on the theory that the transaction between Cox and his friends in the Bahamas was not with the Hertz Corporation either directly or through an agent of that company. This, it seems to us, overlooks the essential nature of the suit that is brought by Miss Crowe and particularly as contended for by Cox, who admittedly is a protected driver of a 'Hertz Rent-A-Car' so far as being entitled to insurance protection is concerned. The complaint is based on the assumption that every person reading and relying upon the Hertz advertising is warranted in accepting as true the statement that wherever a 'Hertz' car is rented worldwide, the person relying upon such advertising is guaranteed that the highest standard of insurance protection is offered; that in this case the defendant Hertz Corporation, whether or not acing through its agent in the usual sense nevertheless provided through its subsidiary corporation for the renting to Cox of a 'Hertz' car which did not have the insurance protection guaranteed to the public * * *

"We think it plain that the presence or absence of the Hertz Corporation in the Bahama Islands at the time this automobile was rented by Cox and his friends is irrelevant to the cause of action asserted by the injured plaintiff. Certainly it is irrelevant to the cross action filed on behalf of Cox to secure his insurance protection in the event Miss Crowe should recover against him." Crowe v. Hertz Corporation, 382 F.2d 681, 687 (5 Cir. 1967).

The facts underlying this suit are as follows: On June 6, 1965, Donald Cox, then a nineteen-year-old student from Kentucky, flew to Nassau with several friends for a vacation. Cox and company stayed at the British Colonial Hotel. There Cox met Sarah Crowe, then twenty-six, a school teacher from Georgia. The next day Cox and one of his friends, Bill Grubbs, met Aldo Bergomi, a resident of Italy. The three of them

decided to rent a car from the Hertz desk at the hotel. Cox testified that they all went to the Hertz desk to inquire about renting the car. The agent at the desk, Bertram Rahming, testified that Bergomi alone came to the desk. Cox and Grubbs realized that they were too young to rent a car in their own names. They decided that Bergomi alone would sign the rental agreement, which he did. The agreement carried a paragraph relating to insurance coverage, but the policy itself was not available at the rental desk for inspection. Liability to passengers was expressly excluded from coverage in the policy, but this exclusion was not set out in the rental agreement.

Bergomi, Cox and Grubbs took turns driving Sarah Crowe and her sisters around Nassau on the afternoon of June 7. The next morning, June 8, Bergomi returned the car to Hertz. Later in the day the three boys agreed to rent another car from Hertz. It is undisputed that Bergomi this time went alone to the Hertz desk to rent a car. Later in the day Bergomi informed Cox that he had made plans for the evening and that Cox could use the rental car for a date that Cox had made with Sarah Crowe. The evidence is conflicting as to the manner in which Cox obtained possession of the car keys for his date. Cox testified that Bergomi left the keys at the Hertz desk for him to pick up. Sarah Crowe's testimony was to the same effect. Hertz employees on duty during this time testified that they had never delivered any keys to Cox. In any event, Cox got the keys, and he and Sarah Crowe began driving around Nassau in search of entertainment. Shortly after making a right turn, Cox steered the car into the wrong side of the road (in the Bahamas the "right" side of the road is the "wrong" side). A head-on collision with another car occurred, and Sarah Crowe was seriously injured.

Evidence was introduced relating to certain advertisements purchased by Hertz which appeared in *Time Magazine.*

These advertisements asserted that Hertz Rent-A-Car rates included "proper insurance", "wherever in the world" a person may be going. Both Sarah Crowe and Cox testified that they had read these advertisements, believed them, and assumed that proper insurance would include insurance on passengers riding in Hertz automobiles. Apparently the last advertisement in which Hertz represented that their rates included proper insurance appeared in 1959, sometime before the events occurred which gave rise to this litigation.

Sarah Crowe filed this suit in the Northern District of Georgia against Cox, a resident of Kentucky, and the Hertz Corporation. Crowe alleged that Cox negligently drove the car on the wrong side of the road and that Hertz had fraudulently represented that insurance was provided to cover passengers in her position. Fraud was alleged on the ground that Hertz had represented that the driver was covered by $100,000 liability insurance and that no exclusion for passengers appeared in the rental agreement. Cox answered, denying his negligence, and cross-complaining against Hertz on the same theory of fraud asserted by Crowe. Cox and Crowe subsequently supplemented their complaints against Hertz, alleging that Hertz fraudulently advertised in the United States that its rental fee included "proper insurance", that they had relied upon these advertisements, and that Hertz had failed to warn them that it did not provide a standard liability insurance policy covering passengers in the Bahamas. Crowe asserted that, as a third party beneficiary of the Bergomi-Hertz rental contract, she could sue Hertz for breach of any warranty expressed or implied in the contract.

Hertz moved for summary judgment solely on the basis that it was not doing business in the Bahamas since the Hertz rental company in the Bahamas was not its agent. The district court granted Hertz's motion. This court reversed without determining whether relief could

be granted against Hertz as a proper party:

> "Because of the determination by the trial court that the Hertz Corporation was not present in the Bahamas through its agent, the court did not consider whether the complaint alleged a state of facts upon which relief could be granted either to Miss Crowe or to the cross-complainant Cox. We, therefore, do not pass on these questions." Crowe v. Hertz Corporation, *supra*, 382 F.2d at 688.

After remand, the parties agreed during the pretrial that the only ground on which Hertz could be held as a proper party was its advertising representations. Hertz moved for a severance of the negligence and fraud phases of the case, which motion was denied. At the close of plaintiffs' evidence, Hertz moved for a directed verdict. This motion, too, was denied. In so doing the district judge said:

> "This suit is not in contract, the way I see it, and I quite agree that the evidence does not show any reliance, even by Mr. Cox, on any alleged provision of the contract, and it is not a suit for a breach of any warranty.
>
> On the other hand, there has been some inference of fraud all the way through. The only kind of fraud that is possibly involved is what is called constructive fraud.
>
> It is not incumbent upon a plaintiff to show this was reckless, willful, fraudulent, in the sense of actual fraud, but it is just purely a question of whether there was representation made and whether it was relied on, whether they had a right to rely on it, and whether it was to their detriment."

Crowe, Cox and Hertz requested special interrogatories on scienter. The court denied each request on the ground that willfulness, recklessness, and knowledge on the part of Hertz were not a part of the case. On the basis of the jury's answers to special interrogatories, the court entered judgment for $205,000.-

00 in favor of Crowe against Cox, for $205,000.00 in favor of Cox against Hertz and for $205,000.00 in favor of Crowe against Hertz. The judgment provided that the payment of $205,000.00 by Hertz to Crowe would satisfy all judgments.

Appellant, Hertz Corporation, raises six points on this appeal: (1) The terms "insurance" and "proper insurance" as used in Hertz advertisements mean, as a matter of law, only the insurance required by the laws and customs of the Bahamas, the place where the vehicle was rented and driven and where the accident occurred; (2) assuming that Bahama law does not determine the meaning of "insurance" or "proper insurance", and that such words constitute representations, the representations were true even when tested by the laws of the United States; (3) Hertz representations as to insurance did not constitute actionable fraud which must be predicated on a misrepresentation of an existing material fact upon which the plaintiff actually relies and has a right to rely; (4) assuming that Cox and Crowe actually relied upon Hertz advertisements as meaning that unlimited passenger coverage would be provided in the Bahamas, and that such meaning could be lawfully attributed to these advertisements, the district court erred in allowing the jury to determine that Cox and Crowe had a right to rely on insurance coverage that was expressly negated by the terms of the rental contract between Bergomi and Caribbean, Hertz's licensee; (5) the trial court erred in denying a severance or separate trials of the gross negligence cause of action against Cox and the fraud cause of action against Hertz, (6) the district court erroneously submitted the case to the jury on the theory of "constructive fraud" and refused to charge on scienter.

Since we conclude that the district court committed error on the basis of the sixth point raised by Hertz above, we are not compelled to examine the others.

However, since we have remanded the case for further proceedings, a new trial is likely, and this case has already now been before us twice, it is prudent that we rule upon the other points of error raised by Hertz as well as the point upon which ultimate disposition here depends.

*1.* Hertz advances two arguments for the proposition that its advertising representations mean, as a matter of law, only the laws and customs of the Bahamas. First it is submitted that the case of Stearns v. Hertz Corporation, 326 F.2d 405 (8 Cir. 1964) should control the instant case. In that case, Stearns, a Missouri resident, was injured in Illinois when the car in which she was riding overturned. The driver rented the car from Hertz in Illinois. Stearns sued the driver of the car in state court and recovered. Stearns and the driver then sued Hertz in federal court in Missouri for falsely representing that its rental fee covered all insurance, including liability to passengers. The same advertisements relating to "proper insurance" which are at issue here were involved in *Stearns.* Judge, now Justice Blackmun, speaking for the court, said:

"\* \* \* Here again we agree with the district court that the latter term ('proper insurance') is to be construed to mean the coverage required by the Illinois law. The insurance provided did comply with that law." *Id.* at 409.

Illinois did not require passenger liability insurance. The court thus affirmed judgment for Hertz.[1]

Hertz contends that *Stearns* is on all fours with this case and is not distinguishable. We disagree. In Stearns the misrepresentation occurred in Illinois, the rental agreement was signed in Illinois and the accident occurred in Illinois. It was conceded that the law of Illinois would control. *Id.* at 406. In this case, while the rental agreement was signed in the Bahamas and the accident occurred in the Bahamas, the misrepresentations and the wrongs occurred in Georgia and Kentucky respectively.

*2.* Assuming, however, that there is no point of distinction between this case and *Stearns*, we would not follow *Stearns.* Hertz advertised in the United States that its rental fee covered "proper liability coverage." Several Georgia cases are cited, however, upholding a variety of exclusion clauses. Even if we assume that the courts of Georgia would uphold a policy excluding passenger liability coverage, the inquiry is not put to rest, for customs are as much a factor under the test we have adopted above in rejecting Stearns v. Hertz Corporation, *supra,* as are laws. There was testimony at the trial below by insurance underwriters from the State of Georgia that they had never heard of such exclusionary clauses. The jury had evidence of the customs of the State of Georgia, and testing these customs against the representations made by Hertz, was warranted in concluding that the representations were untrue.

*3.* Hertz offers three arguments in support of its contention that its representations did not constitute actionable fraud. First, Hertz argues that its representations as to insurance were either (a) opinions in the nature of commendatory sales talk, (b) statements of law, or (c) promises as to what Hertz would provide its customers. Georgia cases are cited which hold that each type of representation is not actionable.

As to each of these contentions we feel somewhat constrained to rely on the interpretation of Georgia Law adopted by the district judge, a man who himself served for some years as a judge of the Superior Court of the State of Georgia. American Home Assurance Company v. Spicer, 402 F.2d 988 (5 Cir. 1968).

"Being a diversity case as to which this court should pay substantial deference to the views of the trial court of the state involved, where jurisprudence at the highest level of the state court is lacking, we consider that we can do nothing better with respect

1. The district court's memorandum opinion is reported at 211 F.Supp. 506 (E.D.Mo.1962).

to our judgment that the case should be affirmed than to accept and adopt the opinion of the trial court, which we do." *Ibid.*

Appellant cites two cases in urging that its representations were merely opinions. Both are clearly distinguishable. In DeMayo v. Walton, 114 Ga.App. 483, 151 S.E.2d 886 (1966), the court held that a representation was a mere statement of opinion upon which an action for fraud could not be predicated. However, in that case, no fraud was alleged because knowledge of the falsity of the representation was not alleged. *See infra.* Plaintiff was seeking to recover merely upon error in an employee's opinion, not upon fraud, which is alleged in the case at bar. The decision in Kontos v. Jordan, 57 Ga.App. 267, 195 S.E. 210 (1938) supports Hertz's contentions, but it was reached on pleading intricacies not relevant in Georgia since the adoption of liberalized rules of civil procedure.[2] We think the evidence offered at trial in this case was sufficient for the jury to find that the advertising representations were misleading statements of fact and not mere puffing.

As to whether or not Hertz's representations were statements of law, rather than fact, there is a line of cases which seem to hold that representations as to insurance coverage when made by an agent of an insurance company, which holds no fiduciary relationship with an insured, are statements of law, *i. e.* involving the legal effect of an insurance policy, and are not actionable as fraudulent misrepresentations. Brown v. Mack Trucks, Inc., 111 Ga.App. 164, 141 S.E.2d 208 (1965); Fields v. Fire & Casualty Insurance Co., 101 Ga.App. 561, 114 S.E. 2d 540 (1960); Sherwin-Williams Company v. St. Paul-Mercury Indemnity Co., 97 Ga.App. 298, 102 S.E.2d 919 (1958). Each of these cases partially turned on lack of showing of a fiduciary relationship and on lack of showing that the agent was acting within the scope of his employment. Agency is not involved in this case since Hertz made the allegedly fraudulent representations directly through advertising. Further, Hertz held out to the public as a whole that its rates included "insurance" or "proper insurance" and by so doing imposed a duty upon themselves. Hines v. Wilson, 164 Ga. 888, 139 S.E. 802, 803 (1927).

Hertz contends that its representations must be construed as representations as to future acts and therefore were merely promissory in nature. In Georgia, a fraudulent misrepresentation must relate to existing or past facts, and not to future acts. Jackson v. Brown, 209 Ga. 78, 70 S.E.2d 756 (1952); Warner v. Jeter, 115 Ga.App. 6, 153 S.E. 2d 626 (1967); J. & C. Ornamental Iron Co. v. Watkins, 114 Ga.App. 688, 152 S.E.2d 613 (1966); Kennesaw Life & Accident Insurance Co. v. Flanigan, 114 Ga.App. 510, 151 S.E.2d 881 (1966); Strickland v. Levy's of Savannah, Inc., 112 Ga.App. 665, 145 S.E.2d 831 (1965); Ambrose v. Brooks, 109 Ga.App. 881, 137 S.E.2d 573 (1964); Monroe v. Goldberg, 80 Ga.App. 770, 57 S.E.2d 448 (1950); Cosby v. Asher, 74 Ga.App. 884, 41 S.E. 2d 793 (1947); Crozier v. Provident Life & Accident Insurance Co., 53 Ga.App. 572, 186 S.E. 719 (1936). Hertz's representations, however, did not relate to future acts, but to existing facts. Hertz did not assert that it would someday in the future provide proper insurance in its rental fees, but instead stated that its rental fees included proper insurance. This is what the jury found that Cox and Crowe relied upon. Even though the last mention of "proper insurance" introduced into evidence was made in 1959, while the accident occurred some six years later, reliance at the later date is not so remote a concept that the issue should have been removed from the jury's consideration. Hertz never published any limitations on its insurance policies or any retractions of its advertising representations.

---

2. Civil Procedure Act of 1966.

Secondly, Hertz contends that there was insufficient evidence for the jury to conclude that Cox and Crowe relied on Hertz advertisements as being a representation that guest coverage would be provided, and no evidence that they relied on unlimited guest coverage. Certainly this is a close fact situation. Were it not so, we doubt that two appeals, and further action thereafter would be necessary. In rejecting Stearns v. Hertz Corporation, *supra,* we adopted a test whereby reliance in this sort of action depends on what a reasonable renter would think. Under such a substantive test, it is the jury's province to make the determination. We find that there was sufficient evidence submitted at trial for the jury to conclude that Cox and Crowe were justified in relying on Hertz's representations, and that they did in fact rely on them.[3]

Thirdly, Hertz argues that Cox and Crowe had no right to rely on the meanings which they and the jury attributed to Hertz's advertisements. In treating this contention it should suffice to say that we think someone could reasonably rely on the Hertz advertisements in deciding whether to rent, drive or ride in one of its rented cars. We cannot conclude that as a matter of law such reliance is unreasonable.

*4.* Appellant contends that even if Cox and Crowe were justified in relying, as the jury concluded they were, upon Hertz's advertising representations, the reliance is nonetheless negated by the terms of the rental agreement between Aldo Bergomi and Caribbean Motor Holding Company, Hertz's licensee in the Bahamas. Keeping in mind that the jury expressly found that Cox was operating the rental vehicle with the consent and permission of Caribbean, and the uncontested evidence that the insurance policy was not immediately available for inspection, we find that the rental agreement did not as a matter of law negate reliance on Hertz's representations. Again, a substantive test is involved, and determination of reliance is for the jury.

*5.* Inherent in appellant's contention that the trial court erred in denying severance or separate trials of the gross negligence cause of action against Cox and the fraud cause of action against Hertz is the allegation that the trial court abused its discretion under Rules 13(g), 14(a), 20(b) and 42(b), F.R.Civ.Proc. We do not think this is the case. Crowe's claims against Cox arose out of the col-

---

3. Special interrogatories propounded to the jury on questions of reliance, and the jury's responses thereto were as follows:
 "Section 2, 'On the Question of Insurance Coverage.'
 5. 'Did the Hertz Corporation make any representation to the public through advertising or otherwise concerning "insurance" coverage or "proper insurance" coverage?'
 Answer: 'Yes.'
 6. 'If so, were such representations of such nature and character as to reasonably justify reliance thereon, on the occasion in question on June 8, 1965, by (a) Miss Crowe?'
 Answer: 'Yes.'
 '(b) Mr. Cox?'
 Answer: 'Yes.'
 7. 'As reasonable persons, did Miss Crowe, as a guest passenger or Mr. Cox, as the driver of the car, actually rely on any such representations as to insurance on the occasion in question on June 8, 1965?

 (a) Miss Crowe?'
 Answer: 'Yes.'
 (b) Mr. Cox?'
 Answer: 'Yes.'
 8. 'If such were made, did any representation of "insurance" or "proper insurance" mean: (a) that liability insurance coverage would be afforded to guest passengers in Hertz vehicles rented to others in Nassau on June 8, 1965?'
 Answer: 'Yes.'
 'Or (b) that liability insurance coverage would be afforded as is required by the laws and customs of Nassau on June 8, 1965?'
 Answer: 'No.'
 9. 'If the answer to Question 8(a) is yes, what limits of liability insurance protection for a passenger should have been afforded under the representations of The Hertz Corporation?'
 Answer: 'Unlimited.' "

lision and her claim against Hertz arose out of advertising representations, but there are questions of fact and of law common to both causes of action, *e. g.* Crowe's damages. We do not think that Hertz is merely in the position of an indemnitor of Cox, since Crowe asserted a direct tort action against Hertz. The trial judge denied severance on several grounds: (1) The Court directed by pretrial order, filed before the motion for severance, that all issues involved in the case be determined in one jury trial, and no exceptions or motion to modify were filed in response to said order; (2) the case would be submitted to the jury on special interrogatories, which mitigate Hertz's position as indemnitor, insofar as Hertz stands in such a position; (3) Crowe asserted direct tort liability against Hertz; (4) the litigation would be expensive and lengthy. On these facts we find that the trial judge did not abuse his discretion in denying the motion for severance.

■ *6.* Hertz maintains that Georgia law requires that a misrepresentation, to be actionable, be made with "scienter",[4] and that there is no evidence in the record of scienter on the part of Hertz. Hertz contends therefore that the district court erred in not instructing the jury on scienter even though all parties requested such a charge. The basis of this suit, as we said before, is that Hertz fraudulently misrepresented in its advertising that it provided insurance protection of the highest standard wherever Hertz cars are rented worldwide. Jurisdiction in this case is based upon diversity of citizenship and we are bound to decide this case as would a Georgia court based upon the law of Georgia. Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Stevens Industries, Inc. v. Maryland Casualty Company, 391 F.2d 411 (5 Cir. 1968); cert. den. 392 U.S. 926, 88 S.Ct. 2285, 20 L.Ed.2d 1386 (1968); Birkett L. Williams Company v. Smith, 353 F.2d 60 (5 Cir. 1965).

■ At common law, scienter is an essential element in an action for damages based upon fraud.[5] While there is

---

4. "Scienter" is a word of art. In Webster's Third New International Dictionary scienter is defined as "a degree of knowledge that makes an individual legally responsible for the consequences of his act—compare *mistake*." Unabridged Edition 2032 (G. & C. Merriam Co. 1966). The word is similarly treated in Black's Law Dictionary. "The term is used in pleading to signify an allegation * * * setting out the defendant's previous knowledge of the cause which led to the injury complained of, or rather his previous knowledge of a state of facts which it was his duty to guard against * * *" p. 1512 (4th Ed. 1957). "Scienter, a term usually employed in legal issues involving fraud, means knowledge on the part of a person making the representations, at the time when they are made, that they are false." 37 Am.Jur.2d Fraud & Deceit, § 197 (1968). "Scienter, as the term is here used, means such knowledge as charges a person with the consequences of his acts. To establish scienter or remediable fraud it is necessary and sufficient, the other essential elements being present, that the representations relied on were made either with knowledge of their falsity or with culpable ignorance of their truth * * *" 37 C.J.S. Fraud § 19 (1943).

5. In the textbook case of Derry v. Peek, 14 App.Cas. 337 (House of Lords 1889), Lord Herschell enunciated the common-law rule.

"I think the authorities establish the following propositions: First, in order to establish an action of deceit, there must be proof of fraud, and nothing short of that will suffice. Secondly, fraud is proved when it is shewn that a false representation has been made (1) knowingly, or (2) without belief in its truth, or (3) recklessly, careless whether it be true or false. Although I have treated the second and third as distinct cases, I think the third is but an instance of the second, for one who makes a statement under such circumstances can have no real belief in the truth of what he states. To prevent a false statement being fraudulent, there must, I think, always be an honest belief in its truth. And this probably covers the whole ground, for one who know-

" * * * knowledge of the falseness of the impression produced by the statements or omissions made * * *" Myzel v. Fields, 386 F.2d 718, 734 (8 Cir. 1967), cert. den. 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968).

a trend against strict requirements of scienter, a majority of American jurisdictions apparently adhere to the common-law view.[6] Georgia is in accord with the majority position. The landmark Georgia case cited by appellant is Penn Mutual Life Insurance Co. v. Taggart, 38 Ga.App. 509, 144 S.E. 400 (1928). In *Taggart* the trial court entered a judgment for plaintiff for damages alleged to have resulted from the defendant's fraud. The language used by the trial judge is reminiscent of the constructive fraud language used by the court below:

> " 'The petitioner avers that the defendant made a misrepresentation of a material fact, upon which the petitioner acted to his injury. Such misrepresentation, even if made by mistake and innocently, constitutes legal fraud, and gives to the petitioner a right of action. Good faith of the defendant will not avail it. Intention of defendant is immaterial, if injury does actually occur.' " *Id.* at 401 (citations omitted).

The court of appeals reversed, establishing the necessity of a showing of willfullness or knowledge in a fraud action for damages.

> "Fraud is either actual or constructive. Either constitutes legal fraud. Actual fraud * * * involves moral guilt, since there must be an intentional purpose to deceive. * * *
>
> " * * * Either actual or constructive fraud may consist in the misrepresentation of a material fact. Whether the fraud is actual depends on whether the false representation was made with the purpose and intent to deceive.
>
> "A material misrepresentation, constituting actual fraud, may give rise to an independent action in tort for

deceit, to recover for damage thus occasioned. In such a suit * * * *it must be shown that such representation was willfully and knowingly false, or what the law regards as the equivalent of knowledge, a reckless or fraudulent representation about that which the party pretends to know, but about which he knows that he does not know, and by which false pretense his purpose and intent is to deceive. Thus, in any suit sounding in tort for damages on account of actual fraud, the gist of the action is the purpose and design to deceive.*

> " * * * It follows that, whatever may be the rule in certain foreign jurisdictions with reference to innocent misrepresentations * * * under the statutes and decisions of this state such misrepresentations cannot amount to anything more than constructive fraud, and, as such, are not creative of any independent right of action for damages in tort in favor of the injured party; but they may support an action in equity to rescind a contract so induced * * * " *Id.* at 402 (Citations omitted, emphasis ours).

*Accord,* Dundee Land Co. v. Simmons, 204 Ga. 248, 49 S.E.2d 488 (1948); Gaultney v. Windham, 99 Ga.App. 800, 109 S.E.2d 914 (1959); Scott v. Fulton National Bank, 92 Ga.App. 741, 89 S.E.2d 892 (1955); Culverhouse v. Wofford, 86 Ga.App. 58, 70 S.E.2d 805 (1952); C. M. Miller Co. v. Ramey, 82 Ga.App. 807, 62 S.E.2d 768 (1950); Camp Realty Co. v. Jennings, 77 Ga.App. 149, 47 S.E.2d 917 (1948); Eastern Motor Co. v. Lavender, 69 Ga.App. 48, 24 S.E.2d 840 (1943); Brown v. Ragsdale Motor Co., 65 Ga.App. 727, 16 S.E.2d 176 (1941).[7]

Since the decision in Taggart, Georgia courts have uniformly and strictly in-

---

ingly alleges that which is false, has obviously no such honest belief." *Id.* at 374.

6. See 37 C.J.S. Fraud §§ 19, 20, 25, and 1970 Supplement, (1943); 37 Am.Jur.2d Fraud and Deceit, §§ 197–202, 206 (1968).

7. An element of wilfullness, knowledge, or scienter is also required in actions in fraud or deceit in Georgia by statute.

Ga.Code Ann. § 105–302 codifying the common law, provides:

> "*Wilful* misrepresentation of a material fact, made to induce another to act, and upon which he does act to his injury, will give a right of action. Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action. In all cases of deceit, *knowledge of the*

sisted upon a showing of willfulness and knowledge in fraud actions for damages. A few examples are demonstrative. In Sutker v. Pennsylvania Insurance Co., 115 Ga.App. 648, 155 S.E.2d 694 (1967), the defendant insurance company's agent had told the plaintiff that an amendment to plaintiff's automobile policy substituting one car for another and adding uninsured motorist coverage would be made. The plaintiff was subsequently involved in an accident with an uninsured motorist. He sued the motorist and recovered judgment. He then sued the insurance company, which had not in fact issued the insurance coverage, for fraud and deceit. The defendant's demurrer to the petition was sustained and this ruling was affirmed on appeal. The court set out the elements of fraud in Georgia, which included the speaker's knowledge of the falsity of the representation. *Id.* at 700. *Accord,* Republic Mortgage Corp. v. Beasley, 117 Ga.App. 303, 160 S.E. 2d 429, 433 (1968); Friendly Finance Company v. Stover, 109 Ga.App. 21, 134 S.E.2d 837, 839 (1964); Daugert v. Holland Furnace Company, 107 Ga.App. 566, 130 S.E.2d 763, 765 (1963); Snows Laundry & Dry Cleaning Co. v. Georgia Power Co., 61 Ga.App. 402, 6 S.E.2d 159, 161 (1939); Leatherwood v. Boomershine Motors, Inc., 53 Ga.App. 592, 186 S.E. 897, 898 (1936). As to the facts before it, the court in *Sutker* held the petition deficient, stating:

" * * * In alleging that a defendant insurance agent was guilty of fraud and deceit in making misrepresentations concerning an insurance binder or amendment, it must be alleged in

> falsehood constitutes an essential element. A fraudulent or reckless representation of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood." (emphasis ours).

8. The following is a non-exhaustive listing. Hester v. Wilson, 117 Ga.App. 435, 160 S.E.2d 859 (1968); Blanchard v. West, 115 Ga.App. 814, 156 S.E.2d 164 (1967); Jackson v. Hatch, 115 Ga.App. 623, 155 S.E.2d 676 (1967); DeMayo v. Walton,

the context of this case, that the agent represented that he had issued the amendment or provided coverage when he knew that he had not, or that he promised that he would issue an amendment, when in fact he had no intention of doing so." *Id.* at 700

The Georgia courts reacted similarly in the case of Whaley v. Holt, 110 Ga. App. 228, 138 S.E.2d 196 (1964). Plaintiff brought a fraud action, alleging that he had purchased an automobile from the defendant upon the representation that it was in good working order and that defendant either knew or should have known this representation to be false. The trial court sustained the defendant's demurrer to the petition and the appellate court affirmed, noting that knowledge of falsity is an essential element in a cause of action for deceit based upon fraud, *id.* at 197, and stating:

> "The petition is lacking at least in the essential averment that the defendants had actual knowledge of the defective mechanical condition of the automobile sold to the plaintiff. The petition alleges that the defendants 'knew or should have known the condition of the car' and 'knew or should have known that said car was worthless for the purpose they sold it to this plaintiff.' These allegations assert at most a constructive knowledge on the part of the defendants and this is not enough." *Ibid.*

Numerous other cases could be cited for the proposition that scienter is an essential element in fraud actions for damages in Georgia.[8]

*supra*; Whiten v. Orr Construction Co., 109 Ga.App. 267, 136 S.E.2d 136 (1964); Bagley v. Firestone Tire & Rubber Co., 104 Ga.App. 736, 123 S.E.2d 179 (1961); Dixie Seed Co. v. Smith, 103 Ga.App. 386, 119 S.E.2d 299 (1961); Wiseman Baking Co. v. Parrish Bakeries of Georgia, Inc., 103 Ga.App. 61, 118 S.E.2d 190 (1961); Hewlett v. Moore, 102 Ga.App. 506, 116 S.E.2d 660 (1960); Southern v. Floyd, 89 Ga.App. 602, 80 S.E.2d 490 (1954); Stovall v. Rumble, 71 Ga.App. 30, 29 S. E.2d 804 (1944).

Against this wealth of authority, appellees, Cox and Crowe, have presented an informative, but to this Erie-bound [9] court, unpersuasive discussion of a modern judicial trend toward strict liability in tort as a result of advertising representations made to the public. Professor Prosser lists thirteen jurisdictions which have adopted this view, some only to a limited extent.[10] Georgia is not among these jurisdictions.

Several Georgia cases are cited for the proposition that negligent advertising gives rise to a cause of action in Georgia. However, the cases cited are in fact products liability cases where the making of representations gave additional grounds for holding defendants liable. In King Hardware Company v. Ennis, 39 Ga.App. 355, 147 S.E. 119 (1929), a stove which was sold to plaintiff exploded after the defendant had told plaintiff that it was impossible for the stove to explode. The Court held the petition not subject to dismissal simply because it failed to allege that the defendant knew that the stove was defective. First the court stated that apart from the representation made by the defendant, "the defect was one which a reasonably prudent dealer should have discovered before placing it (the stove) upon the market and delivering it to a customer." Id. at 122. Alternatively, and as dictum, the court said:

"* * * even if it could be said that the petition fails to allege any facts to show a duty * * * to have known of the defective character of the instrumentality, provided no representations were made, * * * (i)t certainly

could not be held that they were without a duty of discovering the defect when they assumed to represent that the stove was safe and could not explode. * * * (I)f a tradesman sells or furnishes an article, representing it to be safe for the uses for which it was designed, it may be concluded that he knew or should have known of such defects as it may possess, and, if it turns out that the article was defective, then, in a suit against him for injuries occasioned thereby, an allegation that he either knew or ought to have known of the defects will be sufficient as a charge of negligence in his failure to know." Id. at 123.

In Chitty v. Horne-Wilson, Inc., 92 Ga.App. 716, 89 S.E.2d 816 (1955), the court, overruling the sustaining of a demurrer, and citing King Hardware, supra, held that the seller of a chattel who makes representations as to its safety is liable for negligence in not discovering defects in the chattel. The Georgia courts have not extended this doctrine beyond the sale of defective chattel, where reliance on misrepresentations is the proximate cause of harm.

■ Consideration of the policy arguments propounded by appellees may be made to the legislature and courts of Georgia but for the time being we must give credence to the position taken by Georgia courts. Appellee, Cox, contends that there are no Georgia cases directly on the point involved in this case. To an extent he is correct. We have found no Georgia cases on scienter requirements in suits involving advertising representations as to proper insurance by car rental

9. Erie Railroad Co. v. Tompkins, supra.

10. "The first major recognition of strict liability came, however, in 1934, when the Washington case of Baxter v. Ford Motor Company [179 Wash. 123, 35 P.2d 1090] held that a statement, in the literature distributed by the maker of an automobile, that the glass in his windshield was 'shatterproof' made it liable, without scienter or negligence, to one who bought the car from a dealer and was injured when a pebble struck the glass and shattered it.

This decision has been followed, and there are now some thirteen jurisdictions which have accepted the strict liability for statements that prove in fact to be false, when they are made to the public in labels on the goods themselves, or in the sellers advertising or his disseminated literature and it can be found that the plaintiff relied upon such statements in making his purchase." Prosser, "The Assault Upon The Citadel," 69 Yale L.J. 1099, 1134 (1960).

companies. However, the abundance of statutory and case law already cited clearly establishes a generally accepted principle of substantive law which we are constrained to follow. Jackson v. Sam Finley, Inc., 366 F.2d 148 (5 Cir. 1966). We must view the entire panorama of Georgia cases rather than focus on isolated language from a few distinguishable cases. Fulton National Bank v. Tate, 363 F.2d 562, 575, 576 (5 Cir. 1966).

 Georgia law is clear. Scienter is an essential element in actions for damages based upon fraud. Since the district court failed to instruct the jury on scienter we must reverse.[11] Hertz contends that there is not even a thread of evidence in the record regarding bad faith or moral guilt, i. e. scienter, on the part of Hertz. Hertz contends that we should therefore reverse the judgment below and render judgment for Hertz. We disagree. Scienter is an issue of fact for the jury. There was evidence introduced below upon which the jury could, had it been so instructed, have found requisite scienter. Specifically we refer to the fact that Hertz discontinued a line of advertising which the jury concluded appellees relied upon to their detriment. Further, Hertz was responsible both for its insurance coverage in the Bahamas and its advertising policies in the United States. If the two

were in conflict, which the jury concluded they were, the jury could have inferred that Hertz knew of the discrepancy.

For these reasons we reverse and remand the case to the district court for new trial and proceedings in accordance with this opinion.

11. The district court instructed the jury regarding defendant's representation as follows:

"Now, next I direct your attention to the second feature of the case loosely termed as that of insurance coverage. Now, in this matter both Miss Crowe and Mr. Cox contend that the Hertz Corporation made representations through advertising and otherwise which they relied on to their detriment.

Generally speaking, where representations are made to the public at large, or to a particular class of persons, with the intention of influencing any member of the public or of the class to whom they may be communicated, anyone injured through a proper reliance thereon may secure redress. In such a case it is not necessary that a representation be made fraudulently or negligently, but the representation must, of course, be intended for the public or for a particular class of persons to which the complainant belonged.

From this general principle and statement of law it can be seen that there are several different facts which must be ascertained in cases of this kind:

First, was any representation as claimed made?

Second, was it important and material to the transaction, and what did it really mean?

Third, did the complainants here, of course, Both Miss Crowe and Mr. Cox, have a right to rely on them?

And, lastly, did either or both of them, in fact, rely on them?"