A92A2040. SHEPHERD et al. v. AARON RENTS, INC.
(430 SE2d 67)

BLACKBURN, Judge.

On October 1, 1987, Aaron Rents, Inc., purchased an office furniture company called Ball Stalker Company from the appellants, James M. Shepherd, Jr., and Ball Stalker Holding Company (the sellers). The purchase price was $2,500,000 cash, plus assumption of approximately $5,500,000 in liabilities, and the sales contract contained purported warranties by the sellers regarding the saleability and value of certain company inventory. That inventory eventually sold for much less than its value represented in the contract, and Aaron Rents

subsequently commenced this action against the sellers for a breach of those warranties. A jury returned a verdict for Aaron Rents in the amount of $398,000 damages, $11,144 prejudgment interest, and $150,000 attorney fees due to the sellers' bad faith in the underlying transaction. This appeal followed the denial of the sellers' motion for judgment n.o.v. and, alternatively, for new trial.

Ball Stalker Company sold two basic types of office furniture: "case goods," which consisted of assembled, stand-alone items such as tables, chairs, desks, and credenzas; and custom "systems," which consisted of furniture created by assembling many components and parts designed for a particular office. These custom systems involved combinations of up to 1,000 parts, 30 to 40 different fabrics, and approximately 100 colors. The components and parts made by one manufacturer were not compatible with those of another manufacturer, and even components of one line of furniture made by a manufacturer could not be interchanged with those of another line by the same manufacturer.

The company inventory that became the subject matter of this lawsuit consisted of miscellaneous components and parts (from various manufacturers) left over from installations of custom systems. This systems inventory, some of it in boxes and some not, was stored in a dusty concrete basement with no air conditioning. Use of these leftover components and parts in creating new systems proved difficult because of the variation in size, color, fabric, finish, and number of different manufacturers of the products, and the lack of any perpetual inventory tracking system.

Charles Harper was the chief operating officer of Ball Stalker Company from September 1985 until Aaron Rents' acquisition of the company in October 1987, when he was given primary responsibility over the company's warehouse, delivery, and installation operations. At trial, Harper testified that no more than five percent of the systems inventory had been sold during the two years preceding the acquisition. He did not recall any sales or dispositions of that inventory having occurred from June 1, 1987, to October 1, 1987. After Aaron Rents' acquisition of the company, Harper intensified the efforts to sell the systems inventory, such as by increasing commission incentives on that inventory, but over the course of the next two years he was able to sell off the inventory for a total of only $200,000. In retrospect, Harper was of the opinion that the systems inventory could not be sold in the ordinary course of the business.

An expert on "systems" furniture also testified that, without a remanufacturing division (which Ball Stalker Company did not have), the prospects for using leftover components and parts were "slim to none." He stated that in the furniture industry, such leftovers are considered to be "scrap," and generally are not saleable in the ordi-

nary course of a dealer's business. He estimated the value of leftover systems components and parts to be five percent of the dealer cost.

The company's book value assigned to that systems inventory as of May 31, 1987, however, had been $1,117,446.95. There were no other inventory counts and valuations between the time of the May 1987 inventory count and Aaron Rents' acquisition of the company. In October 1987, the current cost of the systems inventory was assessed at $1,352,000.

1. The sales contract executed on October 1, 1987, provided that "[a]s an inducement to purchaser to enter into this agreement," the sellers warranted that the systems inventory (a) was "of a quality and quantity usable and saleable in the ordinary course of the company's business," and (b) was "carried on the company's books of account at the lower of cost or market, with the exception that certain items of inventory . . . may have a realizable market value which is less than the values at which such items are carried on the company's books. Such difference should not exceed approximately $250,000." On appeal, the sellers contend that this contract provision merely constituted a nonactionable expression of opinion as to value, and was not a warranty.

" 'The decisive test, in determining whether language used is a mere expression of opinion or a warranty, is whether it purported to state a fact upon which it may fairly be presumed the seller expected the buyer to rely and upon which a buyer would ordinarily rely. If the language used is of that character, the fact of reliance on the part of the buyer and the presumption of intent on the part of the seller which the law would raise in such a case would operate to create a warranty.' " *Smith v. Frazer*, 144 Ga. 85, 88 (86 SE 225) (1915). " 'No particular form of words is necessary to constitute a warranty. . . . To make an affirmation at the time of sale a warranty, it must appear to have been so intended, and not to have been a mere expression of opinion. . . . [W]hether the words used amount to a warranty or not, is a question for the jury. . . .' " *Bell v. Menzies*, 110 Ga. App. 436, 438 (138 SE2d 731) (1964).

In the instant case, the contract prefaces the purported warranty regarding the value of the systems inventory by stating that it was given as an inducement to enter the agreement. The purported warranty assigned a specific value to the inventory, i.e., that carried on the company's books, and indicated that the valuation was a conservative one. It certainly could be found that the terms of this purported warranty were intended to cause the purchaser's reliance upon the valuation, and that the assigned valuation was so definite and factual, that it would not be mere opinion. The fact that the sellers reserved a "cushion" of $250,000 regarding the valuation of some of the inventory further suggests that the sellers intended to give a war-

ranty, inasmuch as such a cushion to avoid liability would be unnecessary if merely an opinion were expressed. Under these circumstances, at least a jury question existed as to whether a warranty was made, and the trial court properly denied the sellers' motion for directed verdict and motion for judgment n.o.v. on this ground.

2. The sellers also contend that the evidence failed to establish that the systems inventory did not consist of items of a quality and quantity usable and saleable in the ordinary course of the business, and that the trial court erred in allowing that issue to be presented to the jury. However, the sellers failed to raise this evidentiary ground in moving for directed verdict and for judgment n.o.v. A motion for directed verdict must state the specific grounds therefor, OCGA § 9-11-50 (a), and " '[a] ground not mentioned in a motion for directed verdict cannot thereafter be raised on appeal. [Cits.]' [Cits.]" *Grabowski v. Radiology Assoc.*, 181 Ga. App. 298, 299 (2) (352 SE2d 185) (1986).

In any event, there was a plethora of evidence adduced showing that the systems inventory was not usable and saleable in the ordinary course of the business. The former chief operating officer of the company, who later was given primary responsibility for the company's warehouse, delivery, and installation operation, and who eventually became the company president, testified that the systems inventory was not saleable in the ordinary course of the business. He had overseen the extra efforts to dispose of this inventory for two years after Aaron Rents' acquisition of the company, and had ultimately sold it for a total of only $200,000, which was much less than the value assigned at the time of the sale of the company. Also, a systems furniture expert testified that such leftover components and parts generally were regarded as "scrap" in the furniture industry, and that there was little prospect of marketing such inventory. This evidence was sufficient to establish a jury question on this issue.

3. On appeal, the sellers emphasize that the sale of the company involved a sale of stock, not a sale of assets, and that the proper measure of damages would be the difference between the price paid for the stock and its actual value. Because the evidence adduced at trial concerned only the value of the systems inventory in question, the sellers contend that Aaron Rents had totally failed to prove its damages, and that the trial court should have directed verdict for that reason.

However, as with the issue of proof of the breach of the saleability warranty, the sellers did not raise this evidentiary ground when they moved for directed verdict and for judgment n.o.v. This issue, in fact, was not raised until the sellers hired a different law firm to prosecute this appeal. Accordingly, this contention may not be considered on appeal. *Grabowski v. Radiology Assoc.*, supra.

The sellers alternatively contend that, even measuring the dam-

ages by the difference in value of the systems inventory as represented and its actual value, Aaron Rents' evidence of its damages was speculative and could not support any verdict. We disagree.

"[T]he ability to 'estimate damages to a reasonable certainty' is all that is required . . . and mere difficulty in fixing the exact amount will not be an obstacle to the award. [Cit.]" (Emphasis omitted.) *Pottinger v. Cross*, 170 Ga. App. 647, 648 (317 SE2d 850) (1984). " 'The rule against the recovery of vague, speculative, or uncertain damages relates more especially to the uncertainty as to cause, rather than uncertainty as to the measure or extent of the damages. . . .' [Cit.]" *Kuhlke Constr. Co. v. Mobley, Inc.*, 159 Ga. App. 777, 780 (3) (285 SE2d 236) (1981).

In this case, the evidence showed that the systems inventory was assigned a book value of $1,117,446.95 as of May 31, 1987. Charles Harper, who was the company's chief operating officer at the time, did not recall any of the inventory being sold or otherwise disposed of between May 1987 and October 1, 1987, when Aaron Rents acquired the company. At the time of an inventory count and valuation in October 1987, the current cost of the inventory was assessed at $1,352,000. Harper also testified about certain items, totalling $127,848, having been counted twice on the company's books. After two years of concentrated efforts to market the systems inventory after its acquisition of the company, Aaron Rents eventually was able to sell the inventory for a total of only $200,000. Further, the systems furniture expert indicated that such inventory would have a value of approximately five percent of the dealer cost. This evidence provided the jury with a sufficient basis from which to calculate the damages incurred by Aaron Rents.

4. OCGA § 13-6-11 provides that a plaintiff may recover attorney fees if the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense. A jury may award attorney fees as expenses of litigation where the defendant has acted in bad faith in the transaction out of which the cause of action arose. *B-X Corp. v. Jeter*, 210 Ga. 250 (3) (78 SE2d 790) (1953). Such an award for attorney fees under OCGA § 13-6-11 will be upheld if there is any evidence to support it. *Cade v. Roberts*, 175 Ga. App. 800 (334 SE2d 379) (1985).

The sellers contend that there is not even a "hint" of evidence to support the jury's award of attorney fees for Aaron Rents under this Code section. In response, Aaron Rents maintains that the circumstances surrounding the sale of the business provided sufficient support of the award, and we agree.

Specifically, when appellant Shepherd showed the chairman of Aaron Rents around the business premises during the negotiation for the sale of the company, he represented that the systems inventory

was necessary to the operation of the business, but he did not disclose any of the problems the company had encountered in trying to dispose of that inventory. At trial, however, Shepherd admitted the extreme difficulty in selling the accumulated systems inventory unless a computer tracking system could somehow be devised. The total evidence regarding the systems inventory thus could support a finding that Shepherd must have known that the systems inventory was unsaleable in the ordinary course of the business, and thus was by no means necessary for the operation of the business. Further, there was testimony that some of the components and parts included in the systems inventory were leftover materials paid for by the company's customers. As such, some portion of the inventory was not even the property of the company, and thus should not have been the subject of any representation in the first place. From the above evidence, the jury was authorized to find that Shepherd was dishonest, and thus had acted in bad faith, in his dealings with Aaron Rents in negotiating the sale of the company.

5. On appeal, this court must construe the evidence most strongly to uphold the jury verdict, and in reviewing the denial of a motion for directed verdict and judgment n.o.v.; the verdict will be upheld if there is any evidence to support it. *Mattox v. MARTA*, 200 Ga. App. 697 (1) (409 SE2d 267) (1991). Further, where the amount of the verdict is within the range of the evidence, it will not be disturbed on appeal. *C & S Nat. Bank v. Haskins*, 254 Ga. 131 (2) (327 SE2d 192) (1985). In the instant case, as discussed above, there is some evidence to support the jury's verdict, and the amount of that verdict was within the range of the testimony and other evidence adduced at trial regarding the value of the systems inventory and the attorney fees. Accordingly, the trial court did not err in denying the sellers' motion for directed verdict, motion for judgment n.o.v., and alternative motion for new trial.

*Judgment affirmed. McMurray, P. J., and Cooper, J., concur.*

DECIDED MARCH 9, 1993 —
RECONSIDERATION DENIED MARCH 24, 1993

*Rogers & Hardin, C. B. Rogers, John J. Almond, Alston & Bird, G. Conley Ingram, Robert D. McCallum, Jr., James C. Grant*, for appellants.

*Long, Aldridge & Norman, James J. Thomas II, Paula R. Miller*, for appellee.