[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10865
_____

D.C. Docket No. 1:12-cv-02578-JSA

GEORGIA OPERATORS SELF-INSURERS FUND,

Plaintiff-Appellee
Cross-Appellant,

versus

PMA MANAGEMENT CORPORATION,

Defendant-Appellant
Cross-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(November 10, 2015)

Before HULL, WILSON, and ANDERSON, Circuit Judges.

PER CURIAM:

In this appeal and cross-appeal from a bench trial,[1] appellant PMA Management Corporation questions the calculation of damages, as well as the finding of fault.  It also argues that the court abused its discretion when it allowed the Cross-Appellant's expert to testify.  Cross-Appellant Georgia Operators Self-Insurers Fund ("Georgia Operators") argues that the court erred when it reduced the damages award, dismissed the negligence and breach of fiduciary duty claims, and declined to award attorneys' fees. After thorough exploration at oral argument and careful review of the briefs and relevant parts of the record, we conclude that the opinion of the magistrate judge reflects a comprehensive understanding of, and a fair and accurate resolution of, the several issues.  Accordingly, the judgment of the court below is affirmed in all respects.   We discuss the several issues in turn.

## I.  PMA'S CHALLENGE TO THE DAMAGE AWARD

In the main appeal, PMA argues: (1) that the magistrate judge erred with respect to its damages award.   PMA argues that the magistrate judge failed to apply the proper Georgia standard.   It also argues that the evidence adduced by Georgia Operators:  (a) fails to establish that PMA's mishandling of its contractual

---

[1]    The bench trial was conducted by the magistrate judge with the consent of the parties.

2

obligations caused Georgia Operators damages; and (b) fails to establish the amount of damages awarded.

We reject summarily PMA's arguments with respect to causation. Independent auditor Hosman found, and PMA representatives admitted as much in internal memoranda, that PMA mishandled their contractual obligations, and that this mishandling resulted in increased claims costs. The magistrate judge based his finding of causation on the report and testimony of Hosman, the admissions of PMA representatives in internal memoranda, the testimony of expert witness McCoy, and simple common sense. The magistrate judge's finding in this regard is supported by ample record evidence. There is nothing speculative about the finding or the evidence on which it is based.

We also summarily reject PMA's argument that the magistrate judge failed to apply the proper standard under Georgia law with respect to the determination of the amount of damages. The magistrate judge properly applied Georgia's standard that damages be estimated to a reasonable degree of certainty. Shepherd v. Aaron Rents, Inc., 430 S.E.2d 67, 70 (Ga.App. 1993) ("The ability to estimate damages to a reasonable degree of certainty is all that is required . . . and mere difficulty in fixing the exact amount will not be an obstacle to an award.").

We also agree with the magistrate judge that the evidence adduced by Georgia Operators and the magistrate judge's findings, with respect to the amount

of damages, satisfies Georgia's reasonable certainty standard. There was ample evidence of serious breaches of PMA's contractual obligations with respect to processing and settling the workmen's compensation claims. Hosman's report concluded that: "The overall performance of PMA . . . fell significantly below industry standards." PMA representatives contemporaneously acknowledged the accuracy of Hosman's report, and expert witness McCoy found widespread patterns of mishandling. McCoy examined in detail the 88 largest claims, which represented more than 90 percent of the total dollars paid out in settlement of claims, and identified such mishandling in 84 of those claims. Moreover, the patterns of mishandling thus identified were of a nature that made it very probable as a matter of common sense that similar mishandling was occurring in a similarly large percentage of the balance of the claims which McCoy did not examine.

On the basis of such evidence, the magistrate judge inferred that the proven patterns of mishandling impacted not only the lost time claims particularly scrutinized by McCoy, but also impacted PMA's overall handling of the claims in the account. We conclude that his inference is amply supported by Hosman's findings, by admissions of PMA representatives in internal memoranda, by McCoy's findings, and by common sense.[2]

---

[2]     Thus, we reject PMA's argument that Georgia Operators was required to prove the precise damage resulting from each of the more than 3,500 claims involved. We agree with the

Because Georgia Operators had proved systemic deficiencies in PMA's overall performance with respect to the claims in this account, the magistrate judge accepted as the starting point for considering damages the extraordinary spike during the years 2007 through 2010 in the cost of claims per $100 of payroll. The spike with respect to the cost of claims during 2007 through 2010 was stark as compared to the historical cost of claims (reasonably calculated based on the most recent years, 2000 through 2006), and as compared to the cost of claims immediately thereafter in 2011 through 2013 (when measures had been put in place to remedy the deficiencies in PMA's performance). The increase in the cost of claims for 2007 through 2010 – over and above what would have been expected had the historical rate of claim cost persisted through those years – was approximately $3 million.

The magistrate judge found that the spike in the cost of the 2007 through 2010 claims was caused in major part by PMA's deficient performance. The magistrate judge carefully examined other possible causes that might have driven up the cost of claims, but found, after careful analysis, that such other causes did not play a substantial role in increasing claims costs during the spike period.

---

magistrate judge that such a requirement would be wasteful of judicial resources, and would be virtually impossible (as was admitted by PMA representatives in internal memoranda). Neither Georgia law nor any ruling of Judge Evans required the method of proof urged by PMA.

5

Nevertheless, the magistrate judge made an adjustment from the approximately $3 million spike figure by excluding all 2007 claims from the analysis, thus reducing the spike figure to approximately $2.3 million. The magistrate judge found that this adjustment "would likely understate plaintiff's damages" and would likely "more than account[] for" the impact of such other causes. However, the magistrate judge found that this adjustment resulted in a "more conservative and more reliable" estimate of Georgia Operators' damages.

After careful review, we cannot conclude that the magistrate judge's findings are clearly erroneous. We also conclude that the magistrate judge's estimate of Georgia Operators' damages satisfies the Georgia standard of reasonable certainty. The magistrate judge's findings are supported by substantial evidence. Ample evidence supports the findings that PMA's deficient practices were widespread and infected its overall performance. The magistrate judge's use of the extraordinary spike in claims costs as a starting point is supported by the fact that the spike occurred in precisely the same time frame during which Hosman and McCoy identified patterns of PMA's mishandling problems. Moreover, as soon as PMA's performance problems were remedied, the claims costs dropped back to approximately the historical rate which preceded the spike. Ample record evidence, as well as common sense, supports the magistrate judge's finding that PMA's performance deficiencies were a major cause of the sudden and

6

extraordinary spike in claims costs.  Ample evidence and common sense also support the magistrate judge's finding that other possible causes did not play a substantial role in increasing claims costs during the spike period, and were appropriately accounted for by the adjustment made by the magistrate judge to the spike figure. [3]  For the foregoing reasons, we are satisfied that the damage award found by the magistrate judge falls well within Georgia's standard of reasonable certainty.

## II.  PMA's CHALLENGE TO COSTNER'S TESTIMONY

PMA's second argument relates to the testimony of Georgia Operators long-time actuary, Costner.   There was no objection in the court below, and no challenge on appeal, to the admissibility of the annual actuarial reports prepared by Costner for Georgia Operators, nor to the admissibility of Costner's testimony at trial explaining the meaning of those actuarial reports.  PMA objected in the court below, and challenges on appeal, only the calculations to which Costner testified at

---

[3]     In its first argument on cross-appeal, Georgia Operators argues that the magistrate judge erred in reducing its damages by excluding consideration of the claims originating in 2007.  We reject Georgia Operators' argument as being wholly without merit.  Many of the 2007 claims were handled and closed out prior to the end of the calendar year 2007, and before PMA took over as successor third party administrator.  With respect to those claims, of course, there could have been no impact at all as a result of any mishandling by PMA.  With respect to the balance of the 2007 claims, as to which PMA's mishandling might possibly have impacted, we cannot conclude that the magistrate judge's rationale was unreasonable.  The relative role with respect to these claims of PMA as opposed to the role of the predecessor third-party administrator, is unclear.  Moreover, it was not unreasonable for the magistrate judge to take into account the impact that the other potential causes (urged by PMA and addressed by the magistrate judge) may have had on costs during the spike time period.

trial, which were based on the data already included in the actuarial reports. We dispose of this argument summarily because we agree with the magistrate judge that the testimony to which PMA objects constitutes simple mathematical computations based upon the data that already existed in the annual actuarial reports. As the magistrate judge noted, the court itself could do that basic arithmetic on the basis of the data already extant in the actuarial reports.

### III.  GEORGIA OPERATORS' CROSS-APPEAL

A.  Georgia Operators' challenge to the district court's holding that Georgia Operators' negligence and breach of fiduciary duty claims were barred by Georgia's Economic Loss Doctrine

Judge Evans granted partial summary judgment on this issue, holding that these claims were barred by the Economic Loss Doctrine. We cannot disagree with Judge Evans' conclusion that Georgia Operators' claims fall squarely under what PMA was obligated to do under express contractual provisions. The damages Georgia Operators seeks are fully encompassed in its breach of contract claim. We cannot disagree with Judge Evans' interpretation of Georgia law with respect to the Economic Loss Doctrine generally, or with respect to the exception for negligent professional services. Accordingly, we agree with Judge Evans that Georgia Operators' negligence and breach of fiduciary duty claims were barred by the Economic Loss Doctrine.

B.    Georgia Operators' challenge to the magistrate judge's denial of attorneys' fees.

8

Finally, we cannot conclude that the magistrate judge erred in declining to award attorneys' fees to Georgia Operators.  We agree with the magistrate judge that the parties intended the indemnity clause to indemnify the indemnitee against liability (including attorneys' fees) to third parties – not to protect the parties to the contract from legal actions between the contracting parties.  This interpretation is supported by the fact that the indemnity clause itself is expressly limited to losses caused by PMA's negligence or willful misconduct, and the fact that the sophisticated parties here would have been familiar with the economic loss rule and would have known that purely economic losses resulting from a breach of contract would not be deemed a negligence claim that could trigger the indemnity clause.

Nor can we conclude that the magistrate judge abused his discretion in declining to award attorneys' fees on the basis of the alleged bad faith on the part of PMA.  Georgia's statute, O.C.G.A. §13-6-11, permits, but does not mandate, an award of attorneys' fees where a defendant has acted in bad faith, in effect leaving the award of fees to the discretion of the fact finder.  Even assuming some bad faith with respect to the August 2011 audit, we cannot conclude that the magistrate judge abused his discretion in finding that PMA's conduct in that discrete instance did not taint PMA's overall performance with bad faith such as to warrant any award of attorneys' fees.

9

For the foregoing reasons, the judgment of the court below is affirmed both with respect to the main appeal and the cross-appeal.

AFFIRMED.